Rex M. PABLO *v.* Katie CROWDER

CA 05-1417 236 S.W.3d 559

Court of Appeals of Arkansas
Opinion delivered May 24, 2006

*Robert R. White*, for appellant.

No response.

JOHN B. ROBBINS, Judge. Appellee Katie Crowder filed a petition for an order of protection against appellant Rex M. Pablo on August 29, 2005, alleging that she was in immediate danger of domestic abuse. On the same day, the trial court entered a temporary order of protection and scheduled a hearing for September 26, 2005. After the hearing, the trial court found that Ms. Crowder proved the allegations in her petition and entered a protection order restraining Mr. Pablo from having any contact with Ms. Crowder for a period of two years. Mr. Pablo now appeals.

Mr. Pablo raises two arguments for reversal. First, he argues that the trial court erred in refusing to allow him to call witnesses on his behalf. Next, Mr. Pablo contends that the evidence presented was insufficient to support the entry of an order of protection. We affirm.

At the hearing, Ms. Crowder testified that she began dating Mr. Pablo in April 2005. She stated that, "I was very serious about Mr. Pablo in the first couple of months," and that, "I even took him to meet my family and I met his family." However, Ms. Crowder indicated that she became concerned about Mr. Pablo's controlling behavior in May 2005, when he would constantly call her at work and call her friends to talk about their relationship.

According to Ms. Crowder, he would also show up at places where she was and demand that she spend time with him instead of her friends.

Ms. Crowder decided that she wanted to end the relationship but that, "I was fearful of calling it off all of a sudden because there were times when I would break plans with him and he would get very angry." In the interest of her safety, Ms. Crowder invited Mr. Pablo to a party on June 17, 2005, where she broke up with him in front of several other people. According to Ms. Crowder, Mr. Pablo grabbed her and tried to kiss her, but she pulled away. Mr. Pablo became very upset and threw a beer bottle that burst behind Ms. Crowder. He also grabbed her arm and screamed obscenities in her face. Although Mr. Pablo did not literally say, "I'm going to hurt you," Ms. Crowder was very afraid for her safety and thought he was going to physically hurt her. She stated that neighbors were turning their lights on and coming outside because the yelling was so loud, and that she told Mr. Pablo to leave. Mr. Pablo left briefly but returned, and resumed yelling in Ms. Crowder's face, when she threatened to call the police. Mr. Pablo left again about a half hour after that.

Ms. Crowder testified that after she terminated the relationship Mr. Pablo was obsessive and continued to come to her apartment and give her gifts and flowers. He also sent her e-mails, the last of which was received on August 25, 2005, when Mr. Pablo expressed anger after he "finally got that I did not want contact with him." Ms. Crowder stated that she received a phone call at 2:30 a.m. on August 29, 2005, and believed it was Mr. Pablo because she recognized his voice. Ms. Crowder stated, "He told me that he was coming over and said some sexually explicit things to me." This caused Ms. Crowder to be "very terrified," and she decided to go to the prosecutor's office and seek a protection order the following day.

Mr. Pablo testified on his own behalf, and he stated that he has not contacted Ms. Crowder since June 19, 2005, although he did send her flowers twice. However, on cross-examination he recanted that testimony and admitted that he continued to contact Ms. Crowder even after she made it clear that she wanted no contact with him, and that the contact continued until August 25, 2005. Mr. Pablo denied making a harassing phone call at 2:30 a.m., and he could not recall yelling in Ms. Crowder's face at the party.

After testifying, Mr. Pablo stated, "I would like to bring up my witness." When asked by the trial court what the witness

would testify to, Mr. Pablo responded, "What happened at the party." The trial court declined to hear any additional witnesses, stating, "We have heard from you and you both have given an account of what happened at this party. I am going to rule that that would be duplicative and simply delay the proceedings."

Mr. Pablo's first argument is that the trial court erred in refusing to allow him to call witnesses on his behalf. He cites Ark. R. Evid. 611(a), which provides:

> *Control by Court.* The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Mr. Pablo asserts that his witnesses would not have needlessly consumed time, and instead would have ensured ascertainment of the truth because they would have rebutted Ms. Crowder's testimony concerning his violent and abusive behavior at the party. Mr. Pablo argues that the trial court's decision on this matter constituted an abuse of discretion.

Mr. Pablo also cites *Gerard v. State*, 235 Ark. 1015, 363 S.W.2d 916 (1963), in support of his first argument. In that case, the trial court revoked the appellant's suspended sentence based on the testimony of seven police officers, while refusing to let the appellant testify on his own behalf or call witnesses. The supreme court reversed and remanded, stating, "[I]rrespective of the offense with which one is charged, and regardless of the testimony against him, a defendant is entitled to call his witnesses — and certainly, — to testify himself." *Gerard v. State*, 235 Ark. at 1019, 363 S.W.2d at 918. In the present case, Mr. Pablo maintains that the protective order is penal in nature given that there is a public record of his abusive or violent conduct and there has been a substantial impact on his personal freedoms. He thus submits that he had the right to present witnesses to rebut the testimony of the complaining party.

■ Our supreme court has held, and our rules of evidence require, that when challenging the exclusion of testimony, an appellant must make a proffer of the excluded evidence at trial so that we can review the decision, unless the substance of the

evidence is apparent from the context. *Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000); Arkansas Rules of Evidence 103(a)(2). At the trial, Mr. Pablo unsuccessfully tried to call an unidentified witness to testify about what happened at the party. What is critical to our determination of this point is that appellant failed to go forward and make any proffer of what the witness's testimony would have been. *See Halford v. State, supra.* Hence, we can only speculate as to what the witness's testimony would have been and any resulting prejudice. While we agree that the trial court erred in failing to allow Mr. Pablo to call the witness, it has consistently been held that we will not reverse in the absence of a demonstration of prejudice. *See Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (2003).

Mr. Pablo's remaining argument is that there was a lack of evidence to support the entry of the protection order. Arkansas Code Annotated section 9-15-103(2) (Supp. 2005) provides:

(2) "Domestic abuse" means:

(A) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members; or

(B) Any sexual conduct between family or household members, whether minors or adults, which constitutes a crime under the laws of this state[.]

Mr. Pablo contends that the trial court erred in finding that he committed domestic abuse against Ms. Crowder, noting that he never specifically threatened to hurt her. He submits that the incident at the party was an isolated event and that there was no evidence that there was any continuing threat of abuse at the time of the hearing.

Mr. Pablo also challenges whether the relationship between the parties met the definition of "family or household members" under the applicable statute. He cites Arkansas Code Annotated section 9-15-103(3) and (4) (Supp. 2005),[1] which provides:

(3) "Family or household members" means spouses, former spouses, parents and children, persons related by blood within the

---

[1] This statute was amended in 2005 to include "persons who are presently or in the past have been in a dating relationship" under the definition of "family or household members." The amendment became effective on August 11, 2005, which was after the July

fourth degree of consanguinity, any children residing in the household, persons who presently or in the past have resided or cohabitated together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together; and

(4)(A) "Dating relationship" means a romantic or intimate social relationship between two (2) individuals which shall be determined by examining the following factors:

(i) The length of the relationship;

(ii) The type of the relationship; and

(iii) The frequency of interaction between the two (2) individuals involved in the relationship.

(B) "Dating relationship" shall not include a casual relationship or ordinary fraternization between two (2) individuals in a business or social context.

Mr. Pablo concedes that there was a very short "dating relationship" between the parties, but contends that a dating period of less than two months is not what the legislature was targeting.

The standard of review on appeal from a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence *Newton v. Tidd*, 94 Ark. App. 368, 231 S.W.3d 84 (2006). Disputed facts and determinations of credibility of witnesses are within the province of the fact finder. *Id.* We hold that the trial court did not clearly err in finding that Mr. Pablo committed domestic abuse against a family or household member.

 Ms. Crowder testified that Mr. Pablo grabbed her, screamed obscenities in her face, and burst a beer bottle behind her at the June 17, 2005, party, causing her to fear for her safety. Over the next couple of months, Mr. Pablo continued to contact Ms.

---

17, 2005, incident at the party. However, the amendment was in effect when appellant made the harassing telephone call on August 29, 2005, which was the same day the petition for order of protection was filed. Mr. Pablo does not argue that the prior version of the statute applies to this case.

Crowder against her wishes, and Ms. Crowder stated she became very terrified when Mr. Pablo called her early in the morning on August 29, 2005, threatening to come to her apartment. From this testimony the trial court could reasonably find that Mr. Pablo committed domestic abuse under the statute by inflicting fear of imminent physical harm, bodily injury, or assault.

Furthermore, we have no hesitation affirming the trial court's finding that the parties were "family or household members." It is conceded by Mr. Pablo that he and Ms. Crowder were in a dating relationship for a couple of months, which Ms. Crowder characterized as "serious." This clearly comes within the definition of the applicable statute.

Affirmed.

PITTMAN, C.J., and BAKER, J., agree.