Jonathan Brian CLAVER *v.* Misty WILBUR

CA 07-871                                        280 S.W.3d 570

Court of Appeals of Arkansas
Opinion delivered March 19, 2008

*Keith, Miller, Butler & Webb, PLC*, by: *R. Austin Oyler*, for appellant.

*Alisha K. Williams*, Legal Aid of Arkansas, for appellee.

R OBERT J. GLADWIN, Judge. Appellant Brian Claver appeals the two-year order of protection entered against him on April 26, 2007, which directed him to refrain from contact with appellee Misty Wilbur's minor daughter, S.W., until April 27,

2009, or face a penalty of one-year imprisonment in the county jail or a fine of $1,000, or both. On appeal, he argues that the entry of the protective order was erroneous and unsupported by the evidence. We agree; accordingly, we reverse and dismiss.

On April 4, 2007, appellee filed a petition and accompanying affidavit on behalf of her then sixteen-year-old daughter, S.W., seeking an order of protection against appellant, who was then twenty years old. The petition alleged that, over the preceding six years, appellant had physically, emotionally, and sexually abused and manipulated S.W. Appellee asserted in the petition that appellant had picked S.W. up from school on two occasions without parental permission. She further alleged that appellant aided S.W. in obtaining an abortion and that, some forty-two days subsequent to the initial abortion, he purchased the morning-after pill and gave it to S.W. for the purpose of terminating a second pregnancy. Appellee detailed in her affidavit how appellant had called S.W. names including "slut," "whore," and "b***h" and encouraged S.W. to sneak out of the family's house. Based upon the petition and affidavit, an ex parte order of protection was issued on April 4, 2007, and a hearing was scheduled for April 26, 2007.

At the hearing on the petition, the circuit judge asked each of the parties a brief series of questions from the bench. Appellee specifically testified that appellant was seeing S.W., her sixteen-year-old daughter, and encouraging S.W. to sneak out because appellee tried to stop contact between them. Appellee also testified that S.W. had become pregnant and that she believed appellant bought S.W. the morning-after pill.

The circuit judge then questioned appellant, who admitted that, even after appellee and her husband prohibited contact, he continued to see S.W. when she initiated the contact. He acknowledged that he was twenty years old and that S.W. was sixteen years old. Upon appellant's admitting that he bought the morning-after pill for S.W., the circuit judge abruptly concluded the questioning, stating, "[a]ll right that's enough for me."

The circuit judge then allowed counsel for the parties to make closing statements. Appellee's attorney declined, but appellant's attorney argued that, as it related to the requested protection order, domestic abuse is defined as physical harm, bodily injury, or assault. He contended that the mere purchase of the morning-after pill failed to rise to that level of abuse, and requested that the circuit court refrain from issuing the order of protection.

The circuit court granted the request for the order of protection and asked appellee how long she wanted the order to be in effect. Appellee stated, "[t]wo years," and the circuit court immediately issued the order for that length of time without further comment or discussion. The order was filed the same day, on April 26, 2007, and appellant filed a timely notice of appeal on May 21, 2007. This appeal followed.

## Standard of Review

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Newton v. Tidd*, 94 Ark. App. 368, 231 S.W.3d 84 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Simmons v. Dixon*, 96 Ark. App. 260, 240 S.W.3d 608 (2006). Disputed facts and determinations of credibility of witnesses are both within the province of the fact finder. *Pablo v. Crowder*, 95 Ark. App. 268, 236 S.W.3d 559 (2006).

Additionally, this court reviews issues of statutory interpretation de novo, as it is for the appellate court to determine the meaning of a statute. *See Miss. River Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002). We are not bound by the circuit court's interpretation, but in the absence of showing that the circuit court erred in its interpretation, that decision will be accepted as correct on appeal. *Id.* The first rule in considering the meaning and effect of a statute is to construe it as it reads, using the ordinary and usually accepted meaning in common language. *Id.* We need not resort to the rules of statutory construction when the language of a statute is plain and unambiguous. *Id.* However, when the meaning is not clear, we look to the language of the statute, the subject matter, the objective to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.*

## Discussion

The purpose of the Domestic Abuse Act is specifically set out in Ark. Code Ann. § 9-15-101 (Repl. 2008), and states:

> The purpose of this chapter is to provide an adequate mechanism whereby the State of Arkansas can protect the general health,

welfare, and safety of its citizens by intervening when abuse of a member of a household by another member of a household occurs or is threatened to occur, thus preventing further violence. The General Assembly has assessed domestic abuse in Arkansas and believes that the relief contemplated under this chapter is injunctive and therefore equitable in nature. The General Assembly of the State of Arkansas hereby finds that this chapter is necessary to secure important governmental interests in the protection of victims of abuse and the prevention of further abuse through the removal of offenders from the household and other injunctive relief for which there is no adequate remedy in current law. The General Assembly hereby finds that this chapter shall meet a compelling societal need and is necessary to correct the acute and pervasive problem of violence and abuse within households in this state. The equitable nature of this remedy requires the legislature to place proceedings contemplated by this chapter under the jurisdiction of the circuit courts.

Domestic abuse, as covered in the act, is defined in Ark. Code Ann. § 9-15-103(3) (Repl. 2008), which states:

(3) "Domestic abuse" means:

(A) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members; or

(B) Any sexual conduct between family or household members, whether minors or adults, which constitutes a crime under the laws of this state . . . .

Appellant and S.W. are considered family members under the act pursuant to subsections (3) and (4) which provide:

(3) "Family or household members" means spouses, former spouses, parents and children, persons related by blood within the fourth degree of consanguinity, any children residing in the household, persons who presently or in the past have resided or cohabited together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together; and

(4)(A) "Dating relationship" means a romantic or intimate social relationship between two (2) individuals which shall be determined by examining the following factors:

(i) The length of the relationship;

(ii) The type of the relationship; and

(iii) The frequency of interaction between the two (2) individuals involved in the relationship.

(B) "Dating relationship" shall not include a casual relationship or ordinary fraternization between two (2) individuals in a business or social context.

Based upon the brief testimony elicited at the hearing, the only allegations from the petition that were proven were that appellant had continued to see S.W. after her parents prohibited contact between them and that appellant had purchased the morning-after pill for S.W. That was the only information upon which the circuit court could have relied in issuing the order of protection based upon a finding that domestic abuse had occurred. Appellee offered no evidence in support of the other allegations in the petition. Appellant asserts that the issuance based upon those facts alone was an error of law.

Appellant contends, and we agree, that Ark. Code Ann. § 9-15-103(2)(B) is inapplicable because there was no finding of sexual conduct that constituted a crime. Regarding domestic abuse as it is covered in subsection (A) of the Domestic Abuse Act, no evidence was presented as to physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault to S.W. in this case. Under the ordinary and usually accepted meaning of the words found in the legislative definition of "domestic abuse," simply maintaining contact with a boyfriend or girlfriend without parental consent does not rise to the level of domestic abuse. The mere fact that S.W.'s parents do not like appellant was not a proper ground upon which to issue an order of protection in the absence of evidence of actual physical harm or the fear of imminent physical harm.

Based upon our review, it appears that the circuit court focused primarily on appellant's admission that he had purchased the morning-after pill for S.W., rather than merely the continuing contact between the two. It was immediately after that admission that further testimony was halted by the circuit judge, and a ruling was announced. Appellant maintains that the purchase of the

morning-after pill for a minor also does not, in and of itself, rise to the level of domestic abuse. His handing over the pill to S.W. would not, in and of itself, have caused any harm to her, so the only argument to be made is that he inflicted the fear of imminent physical harm by doing so. There is no evidence before us that appellant urged S.W. to take the pill, that she intended to take it, or that she did actually take it.

■ Although we are convinced by a plain reading of the statute that no domestic abuse occurred, we obtain further clarification from our review of the subject matter of the statute, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *See Miss. River Transmission Corp. v. Weiss, supra.* The previously set forth purpose of the Domestic Abuse Act supports appellant's argument that this is not the action or consequence sought to be prevented.

Two Arkansas cases cited by appellant are instructive on the subject of actions found to constitute domestic abuse. In *Pablo v. Crowder, supra*, this court found that grabbing the victim, screaming obscenities at her, bursting a beer bottle behind her at a party, continuing contact against her will, and making a threatening phone call were sufficient acts to find that the victim feared for her safety and thus support a finding of domestic abuse and issuance of an order of protection. Likewise, in *Simmons v. Dixon, supra*, this court determined that there was an imminent threat of physical abuse when the appellant sent the victim a series of threatening text messages that caused her fear.

■ In the instant case, there was no showing by appellee that appellant had ever threatened S.W. either verbally or through his physical actions. There was no evidence that physical injury had been inflicted upon her. Here, appellee failed to provide evidence of actual fear that S.W. was in jeopardy of imminent bodily injury. S.W. certainly never provided such evidence on her own behalf, and although she was a minor at the time of the hearing, she was sixteen years old and could have provided insight as to what level, if any, of fear she had with respect to appellant. Appellant had subpoenaed S.W. for the hearing, but the circuit judge issued her ruling without the benefit of S.W.'s testimony on this issue.

Appellant analogizes this case more closely to *Newton v. Tidd, supra*, because it too involved a situation where the petition for an

order of protection was brought by someone other than the actual party upon whom domestic abuse was alleged to have occurred. In *Newton*, the petitioner was the daughter of the alleged abuse victim, and it was the daughter who felt threatened by her mother's association with the individual involved. There was evidence of bruising to her mother's arm that might have resulted from the individual "escorting" her on an occasion, and testimony that the individual had been verbally controlling. The evidence of alleged abuse in *Newton* was significantly more substantial than that presented in the instant case; still and yet, this court held that the circuit court's issuance of a protective order was clearly erroneous because the actions did not fall under the statutory definition of domestic abuse. *Id.*

Although appellee claims that she feared for the safety and welfare of her teenage daughter if contact were to continue between S.W. and appellant, she failed to provide evidence to support those allegations. She reiterates that appellant disregarded all her previous efforts to keep S.W. and him apart and that she felt her only recourse was through the courts. Appellee and her husband may have had alternative remedies available to them, possibly even within the criminal-justice system, related to their concerns about the continued relationship between S.W. and appellant. No criminal charges were ever sought against appellant, and S.W.'s family failed to seek the assistance of the juvenile-justice system or other family-services programs. Instead, appellee proceeded under the wrong statute and sought an inappropriate remedy. Accordingly, we hold that the circuit court's findings are clearly erroneous and clearly against the preponderance of the evidence.

Reversed and dismissed.

GLOVER and VAUGHT, JJ., agree.