2010 Ark. App. 345

**Martine "Tina" OATES, Appellant**

**v.**

**Michael "Mickey" OATES, Appellee.**

**No. CA 09–496.**

Court of Appeals of Arkansas.

April 21, 2010.

Rehearing Denied June 2, 2010.

Denise Reid Hoggard, Heather Goodson Moody, Leah B. Lanford, Little Rock,

Matthew Eisenstein, R. Stanton Jones, Washington, DC, for appellant.

Stephanie Angel Chamberlain, Little Rock, for appellee.

RITA W. GRUBER, Judge.

The parties in this case, Martine Oates and Michael Oates, have a long history of marital strife. They have been in intermittent litigation in the Pulaski County Circuit Court since January 2004. They were finally divorced by a decree entered March 16, 2009, which was appealed and decided as a companion case to this one. *Oates v. Oates,* 2010 Ark. App. 346, 2010 WL 1609411. In this appeal, Ms. Oates seeks reversal of the circuit court's order denying her petition for a protective order against Mr. Oates. We find no error, and we affirm the circuit court's order.

On March 10, 2008, Ms. Oates filed a petition for an order of protection on behalf of herself and her three children: N.O., who was eleven; G.O., who was eight; and A.O., who was five. She contended that Mr. Oates had committed domestic abuse on March 7, 2008.[1] In her petition, she alleged that Mr. Oates became angry with her in front of their three children and a neighbor's child; swore at her; and made "horrid remarks" about her, her family, and her religious beliefs. She said that she became concerned for the children's safety and asked them to leave. To prevent her from using the telephone, she said Mr. Oates "cornered" her in the kitchen and ripped the phone out of the wall, telling her not to call the police. She alleged that her son, G.O., went upstairs to look for his shoes and came down crying and unable to speak at first, eventually saying, "Daddy said horrible things about you, please don't tell him I said anything." Ms. Oates and the children went to a neighbor's house. When Ms. Oates returned, she discovered that Mr. Oates had shoved her personal items down the toilet and ransacked her closet while she was gone.

Ms. Oates's petition also alleged that Mr. Oates had committed acts of domestic violence before the incident complained of: (1) In March 2005, Mr. Oates hit her across her arms, kicked her in the stomach, and pulled the phone from the wall. This was witnessed by their son, N.O., who was eight years old at the time. (2) In July 2002, Mr. Oates strangled her when she was pregnant. (3) Mr. Oates threw the family puppy down the stairs in front of N.O.

Before the case was transferred to the Thirteenth Division, the Seventeenth Division awarded an ex parte temporary order of protection on March 10, 2008, and set a hearing for March 26, 2008. The case was transferred to the Thirteenth Division on March 18, 2008, and the Thirteenth Division set a hearing on April 8, 2008. At the conclusion of this hearing, the court offered Ms. Oates additional time on a later date to conclude her case. The court refused, however, to extend the ex parte temporary order of protection, which expired on April 8, 2008. Additional testimony was taken on May 6, 2008.[2]

---

1. The petition was assigned to the Seventeenth Division of the Pulaski County Circuit Court, but it was later transferred to the Thirteenth Division because it was familiar with the parties and their claims against one another from several domestic-relations lawsuits filed in the Thirteenth Division.

2. The parties agreed that the court would also hear testimony at the May 6, 2008, hearing for the divorce case, filed by Mr. Oates on March 18, 2008, and a petition for an order of protection on behalf of the Oateses' three children, filed on April 11, 2008, by a representative of Safe Places, a domestic violence advocacy organization.

Ms. Oates testified that on March 7, 2008, a snow day on which the kids were out of school, she and Mr. Oates argued and he called her a "F'ing b——." She told the boys to leave, at which point G.O. went upstairs. Mr. Oates then closed the living room blinds, which she testified made her afraid. Ms. Oates said that when she went into the kitchen Mr. Oates cornered her behind the kitchen table. She said that when she attempted to get the phone, Mr. Oates ripped it away from the wall. Mr. Oates then went upstairs, and G.O. came down the stairs crying. She and the children left the house. She said that when she returned, Mr. Oates had ransacked her closet and put some of her personal items in the toilet. Ms. Oates testified that she felt threatened and fearful for her safety.

The parties' neighbor, Cheryl Starry, testified that when Ms. Oates and the children came to the house after the incident on March 7, 2008, Ms. Oates, N.O., and G.O. were crying and G.O. got in the fetal position and would not speak. She said that N.O. told her that Mr. Oates slapped G.O. Ms. Starry testified that she did not inform Ms. Oates of this. She also admitted that she did not include this information about G.O. being slapped in a statement she gave about the events on March 7th.

Angela McGraw, a violence prevention coordinator for Safe Places, testified that, while she had never spoken to Mr. Oates, she believed Ms. Oates's version of the events. She thought that Ms. Oates was a prime example of one who is suffering emotional abuse from domestic violence. Dr. Dawn Doray, a child psychologist, testified that she had counseled the Oateses' children beginning on March 20, 2008. She testified that G.O. told her that on March 7 his father pulled him into a room, yelled obscenities about his mother, asked

him a lot of questions, and slapped him in the face two times. She said that both G.O. and N.O. were afraid of violence from their father. Although she had never spoken with Mr. Oates or read an evaluation by the court-appointed expert, Dr. Paul Deyoub, she testified that she believed Ms. Oates and the children. Her opinion was that the children were victims of domestic violence.

Mr. Oates disagreed with Ms. Oates's account of the events on March 7, 2008. He admitted that he drank alcohol that day while in the garage watching television. He said that when he came inside, he and Ms. Oates started arguing. He testified that he closed the blinds not to intimidate her but because he likes the blinds closed. He also admitted that he unintentionally cornered her so he could get to the phone to keep her from calling the police. He grabbed the phone and it came off the wall. He said that Ms. Oates was yelling at him, but he testified that he did not threaten her, hit her, or hit or threaten his son.

Dr. Paul Deyoub is a forensic psychologist who was court-appointed in 2006 to perform an evaluation for purposes of aiding the court in determining custody of the children after Ms. Oates took the children to Ireland for two months and returned when Mr. Oates filed for divorce. He testified at the May 6, 2008, combined hearing regarding custody in the divorce case. His opinion in his twenty-six page report from 2006 stated that Ms. Oates was "shamelessly alienating the children from their father, but so far the targeted child has been N.O. and he is the only one of the three children who is actually alienated from his dad." He opined that it could become much worse if Ms. Oates continued to influence the children to reject their father. His testimony in the May 6, 2008, hearing was that his opinion

had not changed. While he admitted that he had not interviewed the parties or the children since his report in 2006 and that he did not condone Mr. Oates's behavior as explained to him, he testified that the allegations surrounding the March 7, 2008, events were consistent with his previous findings and that it did not appear to constitute domestic abuse. He testified that the children were not in danger when in Mr. Oates's care, that the incident was more of the same in terms of the parties' "hysterical relationship," that both parties were responsible during these arguments, and that Mr. Oates was not physically abusive to the children.

On October 15, 2008, the court entered an order denying Ms. Oates's petition for an order of protection because she failed to prove her allegations of domestic abuse by a preponderance of the evidence. In its very detailed order, the court found that the credibility of the witnesses was "of utmost importance" in the case. It then found the testimony of the Starrys not helpful because they had no personal knowledge of the events but knew only what Ms. Oates had told them. With regard to Ms. Starry's testimony about Mr. Oates slapping G.O., the court found that she altered her testimony many times about this and the court believed that Ms. Starry was not truthful and was trying to help Ms. Oates. The court also found that the testimony of Ms. McGraw and Dr. Doray was not helpful because neither had ever spoken with Mr. Oates and their views were based solely upon what Ms. Oates had told them. Although the court noted that Dr. Doray testified that G.O. told her Mr. Oates had slapped him, G.O. told her this thirteen days after the alleged incident; and Dr. Doray conceded that there had been numerous previous allegations of abuse, none of which had been substantiated.

The court found that Dr. Deyoub had done the most extensive work with the family, performed the most thorough review, evaluated both parties and the children, and heard similar allegations of abuse. The court agreed with Dr. Deyoub's opinion that the March 7, 2008, incident was not domestic abuse and that neither the children nor Ms. Oates were in danger.

The court did not find Ms. Oates to be a credible witness. The court noted that Ms. Oates presented herself as completely without fault and as an innocent victim. The court noted that it was clear from past proceedings that Ms. Oates wanted Mr. Oates to have as little contact with the children as possible. The court also observed that each time Ms. Oates came to court, she testified about additional and more elaborate allegations of abuse.

The court did, however, believe Mr. Oates. While the court specifically did not condone Mr. Oates's behavior on March 7, 2008, it found him truthful and did not believe his behavior rose to the level of domestic abuse. Nor did the court believe that Ms. Oates proved G.O. had been slapped. The court noted that there were no witnesses and that the testimony regarding the alleged incident was inconsistent. Ms. Oates has appealed the court's denial of her order of protection.

Before addressing Ms. Oates's points on appeal, we first turn to Mr. Oates's argument that because the temporary order of protection expired on April 8, 2008, there is no order from which Ms. Oates could appeal. Mr. Oates cites no authority for this proposition and we know of none. Although the temporary order expired, the hearing on April 8, 2008, which was continued on May 6, 2008, concerned a permanent order of protection pursuant to the petition filed by Ms. Oates. The court denied the petition for a permanent order

of protection after holding a hearing that extended over two days (April 8 and May 6) in its order entered on October 15, 2008. Ms. Oates has properly appealed from that order.

## I.  Domestic Abuse

In her first point on appeal, Ms. Oates contends that "as a matter of law" the circuit court erred in denying her petition for a protective order because Mr. Oates's actions "plainly" satisfied the statutory definition of domestic abuse. While Ms. Oates couches this as an issue of law, we do not view this as a question of statutory interpretation, but a question of whether there was sufficient evidence to support the court's decision. The standard of review on appeal from a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Newton v. Tidd,* 94 Ark. App. 368, 231 S.W.3d 84 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Simmons v. Dixon,* 96 Ark. App. 260, 267, 240 S.W.3d 608, 613 (2006). Disputed facts and determinations of credibility of witnesses are within the province of the fact finder. *Pablo v. Crowder,* 95 Ark. App. 268, 272, 236 S.W.3d 559, 562 (2006).

"Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark.Code Ann. § 9–15–103(3)(A) (Repl.2009). In this case, the court had extensive background information on the parties and their children based on several earlier domestic-relations cases filed with the court and a very detailed report from Dr. Deyoub. In April 2006 the court ordered Dr. Deyoub to perform a psychological evaluation to aid it in determining custody. In this case, the court heard several days of testimony and made comprehensive findings in its written order. It specifically rejected the testimony from Ms. Oates's witnesses as biased and not credible because none of the witnesses had discussed the incident or the parties' problems with Mr. Oates. The court also found Ms. Oates to be untruthful and Mr. Oates to be truthful. Credibility determinations are not this court's to make; disputed facts and determinations of credibility of witnesses are within the province of the fact finder. *Pablo,* 95 Ark. App. at 272, 236 S.W.3d at 562.

Although Mr. Oates admitted that the parties argued, that he pulled the phone out of the wall, and that he closed the living room blinds, Mr. Oates testified that he neither threatened Ms. Oates, hit her, or hit or threatened his son. He also testified that he did not intend to frighten Ms. Oates. Thus, Mr. Oates's testimony offered no evidence of "[p]hysical harm [or] bodily injury" or of "the infliction of fear" of either. Ms. Oates argues that Mr. Oates's intent is irrelevant because she testified that she was afraid, and that domestic abuse requires only "the infliction of fear of imminent physical harm, bodily injury, or assault." But Ms. Oates is ignoring a very important finding of the court: it did not believe her. We hold that the court's finding of no domestic abuse was not clearly erroneous.

## II.  Dr. Deyoub's April 2006 Report

Ms. Oates's second point on appeal is that the circuit court erroneously relied upon Dr. Deyoub's opinions from April 2006 to conclude that Mr. Oates's conduct on March 7, 2008, did not constitute domestic abuse. She argues that Dr. Deyoub's April 2006 opinions were irrelevant.

The circuit court's order in this case is ten pages and includes thirty-five numbered paragraphs. Only two of those numbered paragraphs reference Dr. Deyoub's testimony. While the court notes that it appointed Dr. Deyoub to evaluate the parties and the children to make a recommendation to it regarding custody in 2006, the court relied on Dr. Deyoub's testimony and opinion in this case, not on his opinion from 2006. Dr. Deyoub testified in this case that the children were not in danger of abuse from Mr. Oates. While he admitted that he had not interviewed the parties or the children since 2006, he testified that the March 7, 2008, incident sounded like "more of the same" and that it was similar to the allegations Ms. Oates had made earlier. In other words, he did not believe it was domestic abuse. The court found Dr. Deyoub credible and his testimony persuasive.

But the court made its decision in this case on the basis of its belief that Ms. Oates and her witnesses were not credible and that Mr. Oates was credible. The court evaluated the other witnesses and their testimony in the remaining paragraphs of its order. The court simply found that Ms. Oates failed to prove by a preponderance of the evidence that Mr. Oates committed domestic abuse.

### III. *Parental Alienation Syndrome*

In her final point on appeal, Ms. Oates contends that Dr. Deyoub's testimony should have been excluded because his opinions were based on the widely discredited psychological theory of Parental Alienation Syndrome (PAS).[3] Although we appreciate the voluminous amount of research and argument explaining why this theory has been discredited and should not be used in Arkansas courts, we hold that the issue is not before us in this case.

This issue is not preserved because it was not raised in a timely manner to the trial court. Although there is no motion in either the addendum or the record filed in this case, there was a motion filed in the addendum to the companion divorce case to exclude evidence of the parental alienation syndrome. This motion was made over three months after the hearing in this case took place, which was too late. Objections to evidence must be made at the time the evidence is introduced. *Edwards v. Stills*, 335 Ark. 470, 504, 984 S.W.2d 366, 383 (1998).

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.

---

3. An amicus brief was filed pursuant to Ark. Sup.Ct. R. 4–6 in support of this point on behalf of the Arkansas Coalition Against Domestic Violence, Domestic Violence Legal Empowerment and Appeals Project, Leadership Council on Child Abuse & Interpersonal Violence, Justice for Children, National Coalition Against Domestic Violence, and National Association of Women Lawyers.