SLIP OPINION

Cite as 2014 Ark. App. 636

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–406

|  |  |
|---|---|
| | **Opinion Delivered**  NOVEMBER 12, 2014 |
| RALPH SHANE CALAWAY | |
| APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT |
| V. | [NO. DR–2012-0558-2] |
| TARA FALLEN CROTTY | HONORABLE MICHAEL R. |
| APPELLEE | LANDERS, JUDGE |
| | AFFIRMED |

**BILL H. WALMSLEY, Judge**

Appellant Ralph Shane Calaway appeals from the Union County Circuit Court's denial of his motion to modify an order of protection involving appellee, Tara Fallen Crotty.[1] Calaway argues that the trial court clearly erred in denying the modification. We affirm.

In an order of protection entered on November 2, 2012, Calaway was ordered to stay away from Crotty, her two minor children, and other members of her family. The order reflects that Calaway had a past dating relationship with Crotty, that he possessed a firearm, and that he had a history of extreme violence. The order was effective for a period of three years. Neither party appealed from the order.

---

[1]In his notice of appeal, Calaway asserts that he is appealing from the trial court's order entered on December 6, 2012; however, that amended order was held null and void in *Calaway v. Crotty*, 2013 Ark. App. 637. It is obvious from Calaway's argument that Calaway appeals from the order denying his motion for modification entered on February 5, 2014. His notice of appeal was timely filed as to that order on February 18, 2014.

SLIP OPINION

Arkansas Code Annotated section 9-15-209 (Repl. 2009) provides that any order of protection issued by the circuit court pursuant to a petition filed as authorized in this chapter may be modified upon application of either party, notice to all parties, and a hearing thereon.

On December 10, 2013, Calaway filed a motion for modification seeking to remove certain language[2] from the order of protection and to limit its duration to six months, which is what Crotty had initially requested. Calaway further sought to include a provision permitting him to possess firearms and to hunt because Crotty did not allege physical abuse or a threat of physical abuse involving a firearm. Crotty opposed Calaway's motion and pointed out that he did not appeal from the order and that circumstances had not changed.

At a hearing held on February 4, 2013, Crotty conceded that Calaway had not violated the November 2012 order of protection. Crotty testified, however, that she wanted the order of protection to continue because "[t]hat's the only thing that has worked so far, me asking him to stay away didn't work. My dad telling him to stay away didn't work. This is the only thing that's worked." Crotty stated that prohibiting Calaway from possessing firearms was important because "[firearms] are such a big part of who he is. [Calaway] has a temper." Crotty expressed her fear that Calaway would use a firearm against her and added that she did not think Calaway was "going to let this go." Crotty further testified, "Do I think he's going to get me back, oh, yeah, I do."

Calaway testified that he had never committed any criminal act against Crotty or her

---

[2]Calaway requested that the trial court omit certain phrases, including that the victims were in immediate and present danger of domestic abuse and that he had a history of extreme violence.

children and that he had never threatened them with a firearm or otherwise. Calaway testified that, since the November 2012 order of protection was entered, he had seen Crotty at Bugs, Bikes, and Bands, an event held downtown, and that he had walked to the other side of the property to avoid her and left the event when he saw her a second time. Calaway testified that he collected old guns and had a hunting camp. He stated that he owned twenty to thirty guns but had sold them to his brother who lived in another state. Calaway conceded that the guns were kept at the home of a friend in Union County. Calaway testified that he had been in trouble with the law before, including several convictions in district court for assault, but he pointed out that those convictions had occurred approximately twenty years ago.

A transcript of the earlier hearing that led to the original order of protection was made a part of the record. At the hearing held on November 2, 2012, Crotty testified that she and Calaway had dated off and on for more than two years and that the relationship had ended in March or April 2011. Crotty testified to specific events that occurred from December 2011 through September 2012. Although Crotty repeatedly asked Calaway not to contact her or her children, he continued to contact them. Crotty stated that Calaway "barged in" at her home when she was there and at other times when she was not at home. On one occasion, Crotty was undressed when Calaway entered her home without permission. Calaway often left gifts for her and the children but was told that his gifts were not wanted. On one occasion, Crotty and her children were returning videos when Calaway blocked her car in the parking lot at the video store. One morning, Crotty and her children were awakened by Calaway screaming for Crotty in the kitchen. On another occasion, Crotty spotted Calaway

walking around in her backyard and looking through a sliding-glass door, and she heard him rattling a doorknob. Calaway came to Crotty's home another time, knocked and attempted to enter, but Crotty ran to the door and locked the deadbolt. Crotty further testified that she and Calaway had "very heated" arguments, during which Crotty thought Calaway might hit her.

According to Crotty, Calaway was obsessed with her children. Calaway followed Crotty when she took her children to school and once approached her in the pick-up line and told her that he would leave everybody alone if she would let him see the children. Calaway came to her home one day when the children were outside playing and pleaded with them not to tell their mother that he was there. Crotty stated that her children were afraid that Calaway would "do something." Crotty testified that Calaway had told her that he would "come after" her and her family if she would not let him see the children.

Crotty's neighbor, Andrea Kiddy, testified that she had heard Crotty begging Calaway to leave her home and asking him not to leave gifts. Kiddy heard Calaway say that he "[had not] even started yet with the family." Kiddy, whose children attended school with Crotty's children, saw Calaway following Crotty to school.

Calaway testified that he had felt like a parent to Crotty's children and that he had "a hard time getting over [the children]." Calaway denied ever hitting Crotty or the children or threatening to hurt them.

In granting the original order of protection, the judge stated,

[T]here is sufficient testimony and the opinion of the Court is that Mr. Shane Calaway has continuously and persistently acted in such a way as to willfully torment, mentally

torment, this Plaintiff by intimidation, by threat, by stalking and involving her children that would give her reason to believe that his conduct is so bizarre and so intrusive that her children might well be in danger as well as herself.

Following the February 4, 2014 hearing, the trial court denied Calaway's motion to modify the order of protection. The trial court noted that Crotty continued to fear Calaway and that Crotty thought the order of protection was still necessary. Moreover, the trial court found that Calaway had not shown any changed circumstances and had not offered any evidence to give the court cause to modify the original order.

The standard of review upon appeal from a bench trial is whether the trial court's findings are clearly erroneous or clearly against a preponderance of the evidence. *Oates v. Oates*, 2010 Ark. App. 345, 377 S.W.3d 394. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. Disputed facts and determinations of credibility of witnesses are within the province of the fact-finder. *Id*.

Calaway argues that there was no dispute that he had never harmed or threatened to harm Crotty or her children and contends that harassment, once per month over six months, does not constitute "domestic abuse."[3] Calaway argues that the evidence does not support a finding that his conduct toward Crotty created in her a fear of imminent domestic abuse at the present time. Calaway further argues that there was no reason to continue the order of

---

[3]"Domestic abuse" means physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members. Ark. Code Ann. § 9-15-103(2)(A) (Repl. 2009). "Family or household members" includes persons who in the past have been in a dating relationship. Ark. Code Ann. § 9-15-103(3).

protection for the entire three-year period because he had stayed away from Crotty and her children.[4]

To the extent that Calaway attempts to relitigate the original order of protection, his failure to appeal from that order prevents us from reviewing it. *See, e.g.*, *Price v. Griffin*, 2012 Ark. App. 205. While we do not address the decision underlying the original order, the facts are relevant to determining whether changed circumstances warranted modification of the order. *Taylor v. Zanone Props.*, 342 Ark. 465, 30 S.W.3d 74 (2000) (trial court may modify injunction if it finds that circumstances underlying injunction have changed).[5] The evidence supports a finding that Crotty continued to fear that Calaway would harm her or her children. The trial court clearly found credible Crotty's testimony that Calaway had a temper and was known to seek revenge. The trial court could reasonably conclude that Calaway still posed a threat to Crotty; therefore, we hold that the trial court did not clearly err in refusing to modify the order of protection.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Mary Thomason*, for appellant.

*PPGMR Law, PLLC*, by: *Brian H. Ratcliff*, for appellee.

---

[4]The trial court was authorized to grant an order of protection lasting from ninety days to ten years, and the duration is a matter of discretion for the trial court. Ark. Code Ann. § 9-15-205(b) (Supp. 2013).

[5]The Domestic Abuse Act of 1991, codified at Ark. Code Ann. § 9-15-101 (Repl. 2009), provides that the relief contemplated under this chapter is injunctive and therefore equitable in nature.