2015 Ark. App. 251

**Jennifer STEELE, Appellant,**

v.

**John LYON, Appellee**

No. CV–14–72

Court of Appeals of Arkansas, DIVISION III.

Opinion Delivered April 22, 2015

Scott A. Strain, for appellant.

Robertson Law Firm, Little Rock, by: Bonnie Robertson, for appellee.

RAYMOND R. ABRAMSON, Judge

|₁Jennifer Steele appeals from the order of protection filed September 10, 2013, in Pulaski County Circuit Court, granting a two-year protective order to John Lyon.[1] On appeal, Steele argues that the trial court erred by allowing Lyon to testify when he was not listed as a witness and by not considering her argument that Lyon had other remedies outside the Domestic Abuse Act, Arkansas Code Annotated § 9–15–101 ("The Act"). She also contends that the trial court erred in allowing certain testimony and that there was insufficient evidence to support the ruling in favor of Lyon. We affirm.

The parties dated roughly eight months, but never lived together. After their relationship ended, the parties ran into each other at a parade and had an altercation. Lyon claimed that he received numerous text messages from Steele harassing and

---

1. This matter was previously before this court on February 11, 2015, and a supplemental addendum was ordered because it was not in compliance with Arkansas Supreme Court Rule 4–2(a)(8). *See Steele v. Lyon*, 2015 Ark. App. 70, 2015 WL 585490.

threatening him. He filed a petition for an order of protection under the Act on June 5, 2013, and an ex parte order was granted with a hearing set for June 27, 2013. The hearing was held, but continued until August 29, 2013. The final order of protection was entered on September 10, 2013.

On September 16, 2013, Steele filed a notice of appeal. On September 20, 2013, she filed a "Brief in Support of Motion for Relief Pursuant to Rule 59 and/or Rule 60" to amend the order to reflect that she did not own or carry a firearm; it was granted on October 17, 2013. Steele filed a motion to extend time for filing the record on appeal on December 11, 2013. The record was lodged with this court on January 16, 2014. Over a year later and after several other extensions, this matter is now before us again.

On appeal, Steele argues that the trial court erred in allowing Lyon to testify even though he was not listed as a witness in discovery and in admitting certain evidence during his testimony. However, Steele provides no citation to authority or convincing argument in its support. It is well established that we will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *See Yankaway v. State*, 366 Ark. 18, 22, 233 S.W.3d 136, 139 (2006); *Hollis v. State*, 346 Ark. 175, 179, 55 S.W.3d 756, 759–60 (2001); *Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996).

Steele's second point on appeal is that the trial court erred in ruling that the case fell within the scope of the Domestic Abuse Act. On August 29, 2013, as a preliminary motion, Steele moved for the court to dismiss the case for lack of jurisdiction over the subject matter. She argues that this was clearly a case in which other adequate remedies existed outside the Domestic Abuse Act in which to address Lyon's complaint. Steele cites the general assembly's intent of the statute and asserts that the legislature did not envision this Act would be used as it was under circumstances like this case presents. Steele argues that there is no pattern in the instant case of any domestic abuse nor is there a pattern of threats. She cites the following language of the statute:

The General Assembly hereby finds that this chapter is necessary to secure important governmental interests in the protection of victims of abuse and the prevention of further abuse through the removal of offenders from the household and other injunctive relief for which there is no adequate remedy in current law.

Ark. Code Ann. § 9–15–101.

Steele contends that Lyon used an adequate remedy by calling the police on June 2, 2013—the day of the incident. She maintains that because Lyon advised the police as to what happened when the parties saw each other at the Conway Pride Parade, and told them that he had received a text that Steele intended to kill herself, that there was an adequate remedy other than filing an order of protection, and as such, the Domestic Abuse Act is not applicable to the instant case.

Her interpretation and application of the statutory language is inaccurate. The sentence in the statute does not mean that a petitioner who alleges domestic abuse or the threat of domestic abuse is precluded from seeking an order of protection if he or she could also seek other remedies, such as criminal charges or civil damages. Steele also contends that the

statute does not apply in this case because the parties never lived together and only dated for roughly eight months. The Act's purpose does not in any way indicate that it should be utilized only when there are no other adequate remedies or that the parties must reside together. Arkansas Code Annotated Section 9–15–103 defines "family or household member" to include anyone in a past or present dating relationship regardless of whether they live together.

This court reviews issues of statutory interpretation de novo. *Claver v. Wilbur*, 102 Ark. App. 53, 280 S.W.3d 570 (2008). In reviewing issues of statutory interpretation, a court will determine the meaning and effect of a statute first by construing the statute just as it reads, "giving the words their ordinary and usually accepted meaning in common language." *Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 550, 65 S.W.3d 867, 872–873 (2002). When the statute's language is clear and unambiguous, there is no need to look further and apply the rules of statutory construction. *Id.* This court has previously ruled that a relationship "clearly comes within the definition of the applicable statute", even when the parties dated for less than two months. *Pablo v. Crowder*, 95 Ark. App. 268, 274, 236 S.W.3d 559, 563 (2006). Here, it is clear that the statute is applicable in this case. Lyon and Steele were in a dating relationship for eight months, and the fact that Lyon had other remedies available to him does not preclude him from seeking relief under the statute.

Steele's next argument on appeal is that the trial court erred in allowing Lyon's Exhibit 1, a series of text messages, into evidence. A circuit court's decision to admit evidence will not be reversed absent a manifest abuse of discretion. *Laswell v. State*, 2012 Ark. 201, 17,

404 S.W.3d 818, 828. The abuse-of-discretion standard "is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration." *Gully v. State*, 2012 Ark. 368, 423 S.W.3d 569, 578 (quoting *Grant v. State*, 357 Ark. 91, 93, 161 S.W.3d 785, 786 (2004)). Further, this court will not reverse a circuit court's decision absent a showing of prejudice. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

Steele argues that the text messages should not have been admitted into evidence because: (1) the text messages did not have names on the documents, (2) the text messages were not a complete record of the communication between the parties, (3) the text messages were not the originals and were taken from a source that was not provided during discovery. We hold that the trial court did not err by allowing the exhibit into evidence because it had been properly authenticated. Further, Arkansas Rule of Evidence 1001(3) defines "original" as the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. If data are stored in a computer or similar device, an "original" includes any printout or other output readable by sight that accurately reflects the data. Ark. R. Evid. 1001(3). As such, the trial court did not abuse its discretion by allowing screenshots of the text messages taken from the phone to be admitted as evidence.

Steele next argues that the trial court erred in allowing testimony by forcing her to read text messages into the record that she could not authenticate. This point on appeal fails for the same reason her first argument on appeal does. Steele does not cite any applicable statuto-

ry or case law to support her argument. We have long held that we will not consider an argument when the appellant presents no applicable authority or convincing arguments in its support. *See Polston v. State,* 360 Ark. 317, 201 S.W.3d 406 (2005); *Hathcock v. State,* 357 Ark. 563, 182 S.W.3d 152 (2004); *Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003). Accordingly, we affirm the trial court's decision on this point.

Steele's fifth and final point on appeal is that the trial court erred in ruling in favor of Lyon because there was insufficient evidence to support the ruling. Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Newton v. Tidd,* 94 Ark. App. 368, 231 S.W.3d 84 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Simmons v. Dixon,* 96 Ark. App. 260, 240 S.W.3d 608 (2006). The appellate court gives due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Robinson v. Ford–Robinson,* 362 Ark. 232, 236, 208 S.W.3d 140, 141 (2005).

At the hearing, the trial court heard testimony from both sides, and it was well within the lower court's discretion to weigh the credibility of each witness. Lyon testified that Steele sent forty-six text messages in one day and acted erratically. Lyon's witness, Christina Harrison, confirmed Lyon's belief that Steele was following him around at the Conway Pride Parade and testified that Steele was suicidal and had threatened to kill Lyon. Steele admitted that she "ran her mouth" to Lyon at the parade. When Steele raised her arm to adjust her sunglasses, Lyon told her not to hit the woman standing next to him, and grabbed her arm. Steele then hit Lyon.

Lyon also testified that he continued to receive harassing text messages and offensive comments from Steele even after he had asked her to stop contacting him. Steele threatened to come to his apartment, and Lyon feared for his safety.

From the testimony presented at the hearing, the trial court could reasonably find that Steele committed domestic abuse under the statute by inflicting fear of imminent physical harm, bodily injury or assault. There was sufficient evidence for the trial court to find that an order of protection should be entered against Steele, and as such the circuit court's decision was not clearly erroneous.

Affirmed.

Gladwin, C.J., agrees.

Harrison, J., concurs.

Brandon J. Harrison, Judge, concurring.

I agree that sufficient evidence supports the circuit court's decision to impose an order of protection for the time it did so. Three evidentiary pillars—the hit/shove incident at the Conway pride parade, the text messages' "harassing" and "offensive" content, and Christina Harrison's testimony—provide the support. As the circuit court stated in its oral ruling, "It really boiled down to a credibility matter and a credibility finding." In fact, a significant portion of Steele's principal brief focuses on undermining the credibility of Christina Harrison (a/k/a Christina Wang).

I.

I write separately to more fully address Steele's arguments on the discovery and evidentiary issues. Steele filed a motion in

limine on August 27, two days before the protective-order hearing that was scheduled for August 29. In that motion she asked the court to exclude two text messages that Lyon had not disclosed until the "11th hour." The disclosure was made in an email, dated August 26, from Lyon's lawyer to Steele's lawyer. Steele argued that the newly produced text messages would prejudice her and that she needed to "find and hire an expert witness to examine cell phones and sim cards, and to schedule depositions," which "cannot be accomplished two days out from the hearing." Steele asked the court to either exclude the text messages or continue the case. She also argued that she would be unfairly surprised if Lyon testified during the primary hearing because he was not named as a potential witness during discovery.

The same day that Steele filed her motion, the court held a telephone hearing. During the hearing the court overruled Steele's objection to Lyon testifying. The court stated that it "has to let Plaintiff [Lyon] testify. The lawyers know that the parties are going to testify in these cases." On the text messages, after some back-and-forth, Lyon's counsel stipulated: "[Lyon] will not offer the written text messages that I emailed [Steele] yesterday, though [Lyon] disagrees on [Steele's] basis for her Motion in Limine, so we can proceed and get to the heart of the matter." The court then asked Lyon's counsel, "Is the Court being told that [Lyon] is not going to present these text messages?" Lyon's counsel responded, "Correct." After that on-the-record agreement, the court told Steele that "any other objections that you have can be made through the normal course of trial."

Lyon was the first witness to testify at the merits hearing on August 29. During direct examination, his lawyer showed him Petitioner's Exhibit 1, which Lyon identified as "texts between me and the Defendant [Steele]." Steele immediately objected "as to lack of foundation" and that "[t]here are no names on these documents." Lyon's lawyer then offered up his client's cell phone "to show the Judge the actual text messages [Petitioner John Lyon] had screen shots of." Steele's lawyer promptly objected again, stating that she had "asked for all communications between the parties, every single one of them in discovery. These [exhibits] are not all of those. [Steele] has not had a chance to look at these [on the cell phone] ... It could have been edited." The court responded, in part, that "[t]he Defendant's objection is based on the question that was asked, and the objection to that question is overruled." Petitioner's Exhibit 1 was then admitted into evidence as one collective exhibit.

Petitioner's Exhibit 1 contains black-and-white photocopies of what appear to be screen shots of text-message conversations. There are approximately 60 individual blocks, or balloons, of text in the exhibit. Given the black-and-white photocopies, one cannot tell the colors of the dialogue balloons. This is important because often different "speakers" in text-message exchanges are assigned differently colored balloons. But no one at the merits hearing connected any speaker in the text messages with any particular color of dialogue balloon. Nor is there an identifying phone number on any of Exhibit 1's pages. Some of the exhibit's pages are date and time stamped; others are not. Regarding their content, the text messages that comprise Petitioner's Exhibit 1 contain somewhat explicit and sensational detail about the parties' break-up. The messages state things like, "Call me or else"; "I'm going to blow my head off outside your apartment"; and "I want you to live with that."

Steele talked about certain text messages contained in Petitioner's Exhibit 1 when called to testify by her lawyer. She said that she sent the May 22 text messages that appeared in the collective exhibit but denied sending the June 2 text messages. Although she acknowledged that the June 2 messages came from her cell phone, Steele also said that those messages were not sent by her because her phone was "in the possession of Christina Harrison." Specifically, Steele said that "it was Christina Harrison who texted [Lyon] 'I'm going to blow my head off outside your apartment. I want you to live with that.'" Steele also denied telling Harrison that she said she would kill herself and Lyon.

## II.

Turning to the points on appeal, the majority correctly notes that Steele argues, among other things, that (1) the circuit court erred by allowing Lyon to testify because he was not listed as a witness in discovery, (2) the court admitted text messages that were not fully and timely produced during discovery, and (3) the court mistakenly admitted Petitioner's Exhibit 1 during Lyon's case-in-chief because its contents were not properly authenticated and violated the best-evidence rule.

*1. John Lyon Was Not a Surprise Witness.* We review the court's decision to exclude or permit the testimony of any witness at trial under an abuse-of-discretion standard. *Collins v. Hinton,* 327 Ark. 159, 169, 937 S.W.2d 164, 169 (1997). Arkansas Rule of Civil Procedure 26(b)(1) requires that parties disclose "the identity and location of persons who have knowledge of any discoverable matter or who will or may be called as a witness at the trial." Consequently, each party should disclose all potential witnesses who may

testify in a matter, including any party. But the circuit court did not abuse its discretion by allowing Lyon, who petitioned for the protective order in the first place, to testify. That he would have had to testify to prosecute this case, much less to maximize any chances to prevail, is no surprise. *See Marvel v. Parker,* 317 Ark. 232, 237, 878 S.W.2d 364, 367 (1994) (no abuse of discretion when the unnamed witness, who was allowed to testify, was not knowingly concealed). Absent some extraordinary situation, and one is not presented here, Steele could not have been surprised to learn that she needed to be prepared to handle Lyon as a witness. That is why the circuit court in no way abused its discretion by concluding that Steele should have anticipated that Lyon would testify to support his own request for a protective order.

*2. The Tardy Discovery Point.* As for Steele's complaint about the untimely disclosure of text messages, it is not clear which messages were disclosed during discovery and which ones were not. Lyon testified that he released 46 text messages during discovery, which does not match the number of text messages in evidence. But we have no particular finding by the circuit court on which messages were or were not disclosed during discovery. Steele bore the burden to bring up a record sufficient to demonstrate that the circuit court erred, and in my view she did not do so on the detail-oriented discovery issue raised on appeal. *See Dodge v. Lee,* 352 Ark. 235, 237, 100 S.W.3d 707, 709 (2003).

*3. The Unauthenticated Text–Messages Point.* On Steele's argument that the text messages contained in Petitioner's Exhibit 1 were admitted against her and were not properly authenticated, my colleagues hold that the messages were properly authenticated. The record is murky

here as I read it; I would hold that Steele's lack-of-authentication point is not preserved for appellate review because it was not squarely addressed by the circuit court. *See Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797 (2003) (when a party seeking relief fails to obtain a ruling on the specific issue, the appellate court is precluded from reviewing the issue on appeal). I say this because it is not clear what the court meant when it said that "[t]he Defendant's objection is based on the question that was asked, and the objection to that question is overruled." The discovery and evidentiary issues seem to have been conflated. Because discovery arguments and evidentiary arguments about Petitioner's Exhibit 1 were being raised and argued nearly simultaneously, I cannot tell what question or objection the court overruled, the basis for the ruling, or whether it was grounded in the rules of evidence or the rules of civil procedure.

### III.

Despite the preservation problem, I am impelled to express some doubt that the text messages were properly authenticated before being admitted as evidence against Steele, given that the use of text messages in civil and criminal litigation is here to stay. At a minimum, a proper foundation for the introduction of electronically recorded material should include who is communicating what to whom. *United States v. McMillan*, 508 F.2d |₁₂101, 104 (8th Cir. 1974). This core linkage fails, or very nearly fails, in this case as I read the record. Not long ago our supreme court discussed in some detail the importance of authenticating text messages and how circuit courts might handle the authentication process. *See Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569 (proponent of the text-message evidence must explain the purpose for which the text message is being offered and provide sufficient direct or cir-

cumstantial corroborating evidence of authorship to authenticate the text message as a condition precedent to its admission). As best I can tell, there was no established method by which the circuit court could know with some certainty why Lyon believed that Steele (or someone else) sent a specific text message on a particular day and time. But my concern does not make a difference here because Steele's authentication-related argument was not sufficiently presented and pursued with the attention to detail that I believe is required to make a sufficiently clear record of the alleged error; and the circuit court did not make specific rulings on particular text messages during the hearing.