

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–17–125

| | |
|---|---|
| JESSI BARHAM | Opinion Delivered:  October 4, 2017 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04DR–12–1278] |
| DANIEL BOWMAN | HONORABLE DOUG SCHRANTZ, |
| APPELLEE | JUDGE |
| | AFFIRMED IN PART; REMANDED IN PART |

**DAVID M. GLOVER, Judge**

Jessi Barham and Daniel Bowman were divorced by decree entered on September 4, 2012. They have three children together. At the time of the underlying proceedings in the instant case, M.B. was ten and the twins, K.B and J.B., were six. Jessi appeals from a post–divorce order addressing matters of child support, visitation, and contempt, contending the trial court erred in three ways: 1) the court held her in contempt based on the testimony of Daniel's wife, who claimed she had a recording of Jessi praying with the children over the phone that they would not have to return to Arkansas but failed to enter the proof into evidence; 2) the court placed Jessi in jail while allowing Daniel to avoid jail; and 3) the court ordered only Jessi to pay attorney's fees although Daniel was in arrears on child support for more than $19,000 and did not award her 10% interest. We affirm in part and remand in part.

SLIP OPINION

Soon after the parties divorced, Jessi remarried and moved to Washington state with the children. Daniel moved to Washington in March 2015, worked for Jessi's new husband, and saw the children often. He then returned to Arkansas in October 2015 and remarried in July 2016.

On March 17, 2016, Jessi filed a petition for contempt, alleging Daniel was in arrears on child support and had refused to pay his share of dental, medical, and hospitalization expenses. She requested a show-cause hearing. On May 23, 2016, Daniel filed a counter-petition for contempt, alleging that Jessi had made derogatory remarks about Daniel to the children, had interfered with his telephone visitations with the children, and had failed to provide him with school and medical information about the children. He, too, requested a show-cause hearing.

On May 26, 2016, the trial court entered a temporary order. The order provided in part that because of Jessi's move to Washington and Daniel's return to Arkansas, the previously ordered visitation schedule was no longer feasible; that Daniel would be filing a motion to modify visitation; that for the summer of 2016, Daniel was to have the children from July 11 to August 18; and that the contempt issues would be reserved until the final hearing in the matter. Daniel filed his motion to modify visitation on June 16, 2016.

On July 14, 2016, Jessi filed an amended petition for contempt and also sought modification of Daniel's visitation and child-support obligations. An amended temporary order was entered on July 21, 2016, slightly altering the dates for the summer visitation set out in the May 26 order and also addressing the manner in which the children would be transported. On August 8, 2016, Daniel filed an amended motion for modification of

visitation and an amended counter-petition for contempt. On September 15, 2016, Jessi filed an amended petition for contempt.

A hearing on these matters was held on September 26, 2016. The testimony provided at the hearing will be discussed *infra* as it pertains to the issues raised in this appeal. At the conclusion of the hearing, the trial court entered its order of contempt against Jessi. In it, the trial court found Jessi to be in criminal contempt of court orders and sentenced her to five days in jail, to begin immediately. On September 27, 2016, the trial court entered its order releasing Jessi from jail and suspending the remaining four days of her sentence. She was further ordered to pay Daniel's attorney's fees in the amount of $1,000.

On October 31, 2016, the trial court entered its order concerning the matters addressed at the September 26 hearing. The order provided in part that the parties had stipulated Daniel had paid only $22,553 of his $32,016 child-support obligation, leaving an arrearage of $9,463, which was "exclusive of $10,400 paid by [Daniel] from childcare tax credits received by [him] because [Jessi] allowed him to claim the minor children as tax dependents." In addition, the trial court found that Daniel was not entitled to a credit for the $10,400 payments he had made from the tax credits, which brought the total child-support arrearage to $19,863, through September 30, 2016. The order provided the manner in which the arrearage was to be paid; awarded Jessi attorney's fees in the amount of $1,986.30 (10 percent of the child-support arrearage); and ordered Daniel to pay Jessi's costs for having brought the action. No mention was made in the order regarding ten-percent interest on the arrearage. The trial court found Daniel to be in contempt for failing to pay his child-support obligation as ordered and sentenced him to thirty days in the county jail, which was held in abeyance on the condition that he pay his child support and arrears as

ordered. The order modified Daniel's child-support obligation, setting the amount at $173 per week (based on Daniel's net income of $521 per week), effective July 14, 2016, which was the date the petition for modification had been filed. The order set forth the manner in which payments would be made and also noted that Daniel was entitled to an abatement of one-half of his child-support obligation anytime he exercised visitation with the children in excess of fourteen consecutive days. The trial court further specified the manner in which the children were to be transported, set the amount and timing for telephone visits, and modified the visitation schedule. Finally, the trial court set forth its contempt finding with respect to Jessi, which will be set out in more detail *infra*.

Jessi's first two points of appeal challenge the trial court's contempt ruling with respect to her and can best be discussed together. For her first point, she contends that the trial court held her in contempt "based on the testimony of [Daniel's wife] who claimed she had a recording of [Jessi] praying with the children over the phone that they would not have to return to Arkansas but failed to enter the proof into evidence." For her second point, she contends that the trial court committed reversible error when it "placed [Jessi] in jail when allowing [Daniel] to avoid such." We find no merit in her arguments.

At the September 26 hearing, Francis Bowman, Daniel's wife, testified on direct examination that she had had occasions to listen to the conversations between the children and their mother and that she had made some notes of the conversations. She stated that Jessi would tell M.B., the older child, to watch out for the twins because Daniel and Francis were unfit to do so. She said that Jessi never referred to Daniel as "dad" when she talked to the children, calling him Daniel instead and referring to him as a "deadbeat." She further recalled that Jessi would tell the children that she was trying to get them to never come back

to Arkansas and that Jessi would pray with the children over the phone, praying to Jehovah that the children would never have to come back to "this awful place and be with us." She said that Jessi told M.B. she was trying to get Daniel put in jail because of the "I-Pad incident"; that she had assured Jessi she and Daniel had not pawned the I-Pad; and that they had just taken it away from M.B. because "no child in the home had any kind of electronics." On cross-examination, when asked if she listened to all the conversations between Jessi and the children, Francis responded, "No." When asked if she made them talk on the speaker phone, Francis explained that the children spoke to Jessi on the speaker phone so all three could speak to her at the same time. When asked if she recorded any of the conversations, Francis stated, "I recorded a few, yes, ma'am." And when asked if she had the recordings with her that day, Francis said she did not; when asked if they backed up the testimony she had given, she said, "No. The ones that I have recorded do not." In addition to Francis's testimony, Daniel was called as a witness in Jessi's case and in his own case. In Jessi's case, he testified in part that Jessi had labeled him "deadbeat dad" on M.B.'s I-Pad. Jessi testified in part that she had never prohibited Daniel from bringing the children to Arkansas; that she had never told the children she was going to have Daniel put in jail; that she had never told them they would never have to return to Arkansas; and that she did not pray to Jehovah so that they would never have to return to Arkansas. She acknowledged that she had installed her data card on M.B.'s I-Pad when the children went to Arkansas for the summer; that when the card connected, the phrase "Daniel Deadbeat" appeared; and that, in retrospect, that was not a good idea and she has changed it.

In its October 31, 2016 order, the trial court further explained its contempt finding with respect to Jessi.

SLIP OPINION

The Court finds that the Plaintiff prayed with the children that they not have to return to Arkansas. Further, she put "deadbeat dad" on her electronic device which was available to and seen by the children. This conduct can only be interpreted to be disparaging of the defendant and an interference with visitation in violation of the Court's previous orders. Therefore, the plaintiff is found to be in contempt of court and sentenced to five days in the Benton County jail. The plaintiff shall be taken into custody immediately and transported to the County Jail to serve these five (5) days. Additionally, Plaintiff shall pay Defendant's attorney fees in the amount of $1000.00, which shall be due within thirty (30) days of the entry of this Court Order.

The trial court found that Jessi had violated its orders by disparaging Daniel by calling him a "deadbeat dad" on a device that was available to the children and seen by them and by interfering with his visitation by praying with the children that they not have to return to Arkansas. As noted earlier, Jessi was taken to jail immediately following the September 26 hearing and was released the next day, with the remaining four days of her sentence suspended.

We begin our discussion of Jessi's first argument by noting that it includes a defense of her right to move to Washington state, which was never disputed. She claims that the trial court chastised her for doing so, and she states that the trial court's comments in that regard "should not be condoned." We do not read the trial court's comments as chastising her for her move but instead merely recognizing that the longer distances complicated visitation. More importantly, her right to move to Washington was never disputed, and it was in no way relied upon by the trial court in finding her in contempt.

Jessi also defends her description of Daniel as a "deadbeat dad." She acknowledges that one should not speak of a father in that fashion and that it was unfortunate the term was on an I-Pad sent with the children but maintains that the "kids are of the age to know that their father is absent by choice and such an event does not warrant jail time for the mother who sought to enforce a support order." Jessi further contends that, while the trial

court has the discretion to assign weight to witness credibility, it should never credit testimony that has claimed evidence exists when it does not, i.e., the recordings of telephone conversations. Jessi does not provide us with any legal authority to support these positions, and her arguments are not convincing either. See *Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827. Although Jessi denied having prayed to Jehovah with the children that they never have to return to Arkansas and making other derogatory comments about Daniel, the trial court specifically found Francis Bowman's testimony to the contrary more credible. In addition, Francis was very candid in stating that the recordings she had made did not include the conversations about praying not to return to Arkansas. The fact other recordings were not introduced into evidence does not prevent the trial court from considering her testimony, which, again, the court specifically found to be credible. Further, although Jessi offers a defense for labeling Daniel a deadbeat dad on the I-Pad that was accessible to M.B., she does not dispute that she did so. We defer to the trial court concerning matters of witness credibility, *Steele*, *supra*, and we are not convinced that the trial court abused its discretion in crediting Francis's testimony over Jessi's.

Neither do we find convincing Jessi's argument that "[p]lacing [her] in jail when allowing [Daniel] to avoid such was reversible error." She begins her discussion by quoting Arkansas Code Annotated section 16-10-108 (Repl. 2010), the contempt statute, and then stating that she committed no statutory infraction, that Daniel never requested she be incarcerated, and that the matter should have been set for a hearing and/or Daniel held to the same standard. The trial court concluded that her conduct was disparaging and interfered with visitation in violation of the court's previous orders, citing specifically the prayers with the children not to return to Arkansas and the deadbeat-dad reference. Jessi develops no

7

convincing argument otherwise. She merely reiterates her denial of praying with the children to Jehovah that they not have to return to Arkansas, asserts that the court's orders contained no specific prohibition about doing so (failing to mention that the standard visitation schedule specifically prohibits parties from making derogatory or disparaging remarks about the other party in the minor children's presence), and argues again that Francis was the only one who testified about the prayers, and she failed to present a recording of it. We have discussed at length the fact that the trial court found Francis's testimony credible, and it is important to note that the trial court also relied upon the deadbeat-dad reference in finding contempt. In addition, we note that contempt powers belong to the court; that the fact that Daniel never requested for Jessi to be incarcerated is not relevant, much less controlling; and that the trial court also found Daniel to be in contempt, sentenced him to thirty days in jail but held that punishment in abeyance "on the condition the defendant pay his child support and arrears as ordered herein," and the court was under no obligation to assign the exact same contempt punishments to the parties. Finally, we dispose of Jessi's fleeting contention that "the matter should have been set for a hearing" by noting that the underlying proceedings were initiated by her petition for contempt, followed by Daniel's counter-petition and the amended petitions of both. In short, both parties were fully notified of the contempt allegations and the fact that those allegations would be addressed in the final hearing, along with modifications to visitation and child support. That final hearing was held on September 26, 2016.

For her final point of appeal, Jessi contends that the trial court "ordered only Jessi to pay attorney's fees although Daniel was in arrears on child support for more than $19,000." Despite making that claim, she then correctly recognizes that the trial court actually did

award her attorney's fees in the amount of $1,986.30, which was ten percent of the child-support arrearage. Consequently, this argument clearly has no merit. However, after acknowledging that the trial court actually did award her ten percent in attorney's fees, Jessi states, "Still, the Court failed to add the 10% interest on the arrears also." Arkansas Code Annotated section 9-14-233(a) (Repl. 2015) provides that "[a]ll child support that becomes due and remains unpaid shall accrue interest at the rate of ten percent (10%) per annum unless the owner of the judgment or the owner's counsel of record requests prior to the accrual of the interest that the judgment shall not accrue interest." Here, the parties stipulated in part about the amount of unpaid support, but the trial court found that an additional amount was also due. The October 31, 2016 order from which Jessi appeals makes no provision for interest on the unpaid arrearage. Therefore, we remand this one issue involving ten-percent interest on the child-support arrearage to the trial court to consider the applicability of section 9-14-233 to the facts of this case. In all other respects, we affirm.

Affirmed in part; remanded in part.

VIRDEN and MURPHY, JJ., agree.

*James E. Hensley, Jr.*, for appellant.

*The Nixon Law Firm*, by: *Theresa L. Pockrus*, for appellee.