

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-481

|  |  |
|---|---|
| CAMERON WORNKEY **APPELLANT** | **Opinion Delivered** March 15, 2017 |
| V. | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17DR-15-536] |
|  | HONORABLE GARY COTTRELL, JUDGE |
| ASHLEY DEANE **APPELLEE** | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Cameron Wornkey appeals a final order of protection entered by the Crawford County Circuit Court. On appeal, Wornkey challenges the sufficiency of the evidence supporting the order. We affirm.

On September 28, 2015, appellee Ashley Deane filed a petition for an order of protection, alleging that she and Wornkey have two children together, they had been in a dating relationship in the past, and they had formerly resided together. She further alleged that on September 27, 2015, Wornkey "[c]ame to get our children and repeatedly stated that he would beat me and my boyfriend until we didn't wake up and stated numerous times he would kill us." In the petition, she added that "he has been incredibly violent since he found out I was moving. He has physically abused me by pushing me into walls and damaged my car (little crack on fender) in front of my children and has threatened me numerous times." She stated that "he has shoved me into walls, thrown me down, threw a knife and thrown things at me."

She claimed that there was an immediate and present danger of domestic abuse. In Deane's affidavit attached to her petition, she stated:

> On 9/27/15 Cameron came to get our children at 11:55 a.m. so I could leave for work. He asked when I was moving and I told him Oct. 1st. He then started saying that I was not allowed to have my boyfriend around *his* kids. He stated that if he ever seen him at my new apartment he would kill me and my boyfriend and take my kids. He stated this numerous times. He then stated that he would drive by all the time so he could catch my boyfriend at my apartment and then would [beat] me and him until we were unconscious and wouldn't wake back up. He stated verbatim, "Let me catch him there and it will be the last. I guarantee you that y'all won't be there anymore." He then stepped forward and yelled in my face saying that I am making a mistake if I thought he wouldn't do anything. I told him I would file a restraining order and he would be arrested. He told me he would sign in and sign back out because there isn't any room in jail. He then stated he would kill me when he got out. I left for work and he texted me that he promises he will do what he said and that a restraining order, or any man (my boyfriend) would not stop him. He said he has family in the complex I am moving to and he will always know who's there.

An ex parte order of protection was entered by the circuit court on September 28, 2015. The ex parte order prohibited Wornkey from initiating any contact with Deane; excluded him from her residence and the immediate vicinity thereof; and excluded him from her workplace and college campus. The ex parte order further ordered that Wornkey appear for a hearing on October 27, 2015.

At the October 27 hearing, Deane sought a permanent order of protection. She testified she and Wornkey had been in an on-again off-again relationship since 2009. She testified that in 2013, Wornkey pushed her down while she was pregnant. She stated that Wornkey pushed her against a wall in June 2015. She restated the allegations she made in her affidavit concerning the September 27, 2015 incident wherein Wornkey threatened to beat her and her boyfriend until they were unconscious and threatened to kill them. She said that when Wornkey left that day, he texted her that no restraining order or man would stop him from

2

SLIP OPINION

doing what he was going to do. Deane also testified that Wornkey had violated the ex parte order of protection on October 12, 2015, when his mother drove him to Deane's apartment. She stated that Wornkey's mother was there to drop off the children and that Wornkey did not get out of the car or threaten her but that the parking lot was ten to fifteen feet from her apartment. She believed that his presence in the parking lot was harassment and a violation of the temporary restraining order. She contacted the sheriff's department and filed a report. She testified that she did not feel safe being near Wornkey and did not want him around her or contacting her.

Wornkey also testified. He denied making any threats to Deane or her boyfriend on September 27, 2015. He stated that he had no desire to talk to her.

At the conclusion of the hearing, the circuit court approved the final order of protection, stating that it was effective until October 27, 2017. The court stated that the order restrained Wornkey from committing any criminal act against Deane; prohibited him from initiating any contact with her; excluded Wornkey from Deane's residence and the immediate vicinity, which included the parking lot; excluded Wornkey from Deane's workplace and college campus; and awarded Deane temporary custody of the parties' children. The court found that the final order did not cover the minor children, and it ordered the parties' mothers to arrange visitation exchanges. The final order of protection memorializing the circuit court's oral findings was entered on October 27, 2015. This appeal followed.

Wornkey challenges the sufficiency of the evidence supporting the final order of protection, contending that the circuit court erred in finding evidence of domestic abuse or of an immediate and present danger. He points out that the circuit court made no specific

findings of domestic abuse or that Deane was in immediate and present danger. Wornkey further argues that Deane did not testify at the hearing that she feared him, and in fact, she left her two small children with him following the September 27 incident. Wornkey also asserts that Deane's testimony was that Wornkey made only verbal threats to her on September 27 and that there was no evidence that he carried out those threats. Finally, he contends that he made no threats to Deane in October 2015 when he was in his mother's vehicle in Deane's apartment parking lot and that she did not testify that she feared his presence there.

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, at 6, 447 S.W.3d 585, 588. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* at 7, 447 S.W.3d at 588–89. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*, 447 S.W.3d at 589.

At a hearing on a petition filed under the Domestic Abuse Act, upon a finding of domestic abuse, the circuit court may provide relief to the petitioner. Ark. Code Ann. § 9-15-205(a) (Repl. 2015). "Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(3)(A). "Family or household members" include persons who presently or in the past have resided or cohabited together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together. Ark. Code Ann. § 9-15-103(4).

In this case, Deane alleged that Wornkey committed acts of domestic abuse because he physically harmed and assaulted her and that he inflicted the fear of imminent physical harm, bodily injury, or assault on her. She testified that Wornkey pushed her down, shoved her against a wall, and threatened to beat and kill her and her boyfriend. She said that he sent her text messages stating the same threats. Deane also told the court that, after she had obtained the ex parte order of protection, Wornkey violated the order by sitting in a vehicle within ten to fifteen feet of her apartment, which the court found was in the immediate vicinity of her apartment. And Deane stated that she felt like his presence there was harassment. Deane further testified that she did not feel safe being near Wornkey and that she did not want him around her or contacting her. Wornkey denied the allegation of abuse.

The circuit court heard testimony from both parties and gave greater weight to Deane's, which was well within the court's discretion. *Steele v. Lyon*, 2015 Ark. App. 251, at 6, 460 S.W.3d 827, 832. Deane's testimony is sufficient evidence from which the circuit court could reasonably find that Wornkey committed domestic abuse by physically harming and assaulting Deane and by inflicting fear of imminent physical harm, bodily injury or assault on her. Accordingly, we hold that the circuit court's decision to enter a final order of protection was not clearly erroneous, and we affirm.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Lisa-Marie Norris*, for appellant.

No response.