KENNETH S. HIXSON, Judge
Tamekia Walter appeals after the Pulaski County Circuit Court denied and dismissed her petition for an order of protection in favor of appellee Gerome D. Chism. On appeal, Tamekia argues that the trial *551 court erred when it denied and dismissed her petition because it erroneously found that she failed to meet her burden of proof. We affirm.
I. Facts
Tamekia filed a petition for an order of protection on April 11, 2017, wherein she alleged that she was afraid of Gerome and that there was an immediate and present danger of domestic abuse stemming from an incident that occurred at Gerome's home on April 10, 2017. The trial court granted an ex parte temporary order of protection, and a hearing was held on the petition on April 26 and May 1, 2017.
At the subsequent hearing for the order of protection, Tamekia testified that Gerome was her boyfriend and that they had been in a relationship for almost six years. Tamekia testified that she had an argument with Gerome that began about potato salad. The argument took place at Gerome's home on April 10, 2017, around 9:30 p.m. Tamekia further testified that when she attempted to leave, Gerome lunged at her and grabbed her hair. Tamekia ran to Gerome's daughter's room, but Gerome dragged her back down the hallway to his room and hit the side of her head with a closed fist. Tamekia additionally testified that after she had accused Gerome of cheating on her, Gerome assaulted her for approximately twenty minutes, kicking her in the stomach, hitting her in the face, and choking her until she "blacked out." After she went home, Tamekia called the police but did not seek any medical attention. Officer Evans responded and took photographs of the scratches on her neck and swollen left eye. Finally, Tamekia testified that Gerome had abused her in the past and submitted photographs of past injuries that she alleged Gerome had caused.
Officer Phillip Evans testified that he responded to Tamekia's call for assistance. Officer Evans stated that Tamekia reported that Gerome had assaulted her. Tamekia indicated that Gerome hit her in the face and stomach. Tamekia did not, however, advise the officer that Gerome choked her or pulled her hair. Officer Evans observed that Tamekia had some swelling to the left side of her face and some red marks around her neck; however, he did not see any bruising on her stomach. Gerome was subsequently taken into custody, wherein he denied Tamekia's allegations.
Tamekia's son testified that Tamekia returned home that evening with a black eye and seemed upset.
Gerome denied that he physically assaulted Tamekia. Gerome described his relationship with Tamekia as mostly an "on and off sexual relationship." On April 10th, Gerome invited Tamekia to join him and his daughter, Justice, for leftover barbeque for dinner. Gerome testified that Tamekia was very jealous and immediately questioned him about whether another woman had made the potato salad for him. After an argument had ensued, Gerome asked Tamekia to leave, and she refused. Gerome testified that he had to lift her up to get her out of his home. Tamekia continued to scream at him from outside the door and told him that she would call the police. After Tamekia eventually left, Gerome received a text message that she was going to take his livelihood away from him and thanking him for another black eye. Gerome repeatedly denied ever striking or hitting her and had no explanation for how Tamekia received any of the injuries she alleged. Gerome explained that Tamekia did not have any marks on her when she left his home.
Gerome's daughter, Justice, testified at the hearing and corroborated her father's testimony. She testified that Tamekia kept resisting and trying to hit her father when he was trying to remove her from their *552 home. Gerome's daughter specifically testified that she did not see her father hit Tamekia or grab her by the hair as Tamekia alleged. She further testified that she did not see any marks on Tamekia before she left their residence that night.
In a detailed order, the trial court denied and dismissed Tamekia's petition for an order of protection and made the following pertinent findings:
28. The Plaintiff has the burden of proof to show that she was in the immediate and present danger of domestic abuse at the time of the alleged act. If the Plaintiffs testimony meets the burden of proof, then she is entitled to an Order of Protection.
29. In the present case, the Court was presented with two diametrically opposed factual scenarios, both believable and both credible.
30. There is no question that the Plaintiff received a swollen left eye during the altercation but whether she received this injury at the hands of the Defendant or through the efforts to re move the Plaintiff from the home is in question. It is significant to the Court that her Petition for Order of Protection lists numerous acts of abuse but that she failed to mention a majority of those alleged acts of abuse to Officer Evans who testified that she never told him about the hair pulling, kicking, punching in the head, choking and being dragged around the house. It appears to the Court that the Plaintiff would have given Officer Evans a complete list of abuse, not just the allegation that she was punched in the left side of her face and stomach.
31. Further, the Plaintiff testified of no injuries she received by being dragged around the house and pushed to the ground.
32. There is no question that there was an altercation at the Defendant's home but this Court is unable to find that the Plaintiff met her burden of proof as to the allegations made against the Defendant.
33. Therefore, the Petition for Order of Protection is denied and dismissed.
This appeal followed.
II. Standard of Review
Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. Bohannon v. Robinson , 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Id.
III. Sufficiency
At a hearing on a petition filed under the Domestic Abuse Act, upon a finding of domestic abuse, the circuit court may provide relief to the petitioner. Ark. Code Ann. § 9-15-205(a) (Repl. 2015); see also Wornkey v. Deane , 2017 Ark. App. 176, 517 S.W.3d 438 ; Oates v. Oates , 2010 Ark. App. 345, 377 S.W.3d 394. "Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4) (Supp. 2017). "Family or household members" include persons who presently or in the past have resided or cohabited together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together.
*553 Ark. Code Ann. § 9-15-103(5). A "dating relationship means a romantic or intimate social relationship between two (2) individuals that shall be determined by examining" the length of the relationship, the type of the relationship, and the frequency of interaction. Ark. Code Ann. § 9-15-103(3)(A). However, a "dating relationship" does not include a casual relationship or ordinary fraternization between two individuals in a business or social context. Ark. Code Ann. § 9-15-103(3)(B).[1]
Tamekia argues that the trial court erred in denying and dismissing her petition for an order of protection. Tamekia alleges that she proved by a preponderance of the evidence that she was the victim of domestic abuse and that the evidence weighed in her favor. Although Tamekia admits that "there may have been evidence to support the trial court's ruling," she contends that "the record taken as a whole clearly shows that a mistake was committed." We disagree. As the trial court acknowledged, it was faced with resolving two diametrically opposed versions of events. Although Tamekia would have us credit her version of events, the credibility of witnesses is within the province of the fact-finder, and we cannot say that the trial court's findings were clearly erroneous in light of the evidence presented. Bohannon , supra. Accordingly, we affirm.
Affirmed.
Abramson and Vaught, JJ., agree.

The appellee did not contend and we do not offer any opinion on whether the relationship as described by the parties herein constitutes the type of relationship that is contemplated by Arkansas Code Annotated section 9-15-103(3).