Cite as 2022 Ark. App. 68

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-197

| | | |
|---|---|---|
| KRISTY CREWS | | Opinion Delivered February 9, 2022 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | | [NO. 16JDR-21-75] |
| | | HONORABLE DAN RITCHEY, JUDGE |
| ROBERT CREWS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Kristy Crews appeals from an order that denied and dismissed her petition for an order of protection that she filed against her husband, appellee Robert Crews. On appeal, Kristy argues that the trial court erred in denying and dismissing her petition because it erroneously found that she failed to meet her burden of proof. We affirm.

I. *Facts*

Kristy filed a petition for an order of protection on February 4, 2021. In her petition, Kristy alleged that Robert, to whom she had been married for twelve years, had physically assaulted her at their home that morning. Kristy alleged that Robert had pinned her against a wall and choked her, and she stated that she feared for her life. The trial court entered an ex parte temporary order of protection, and a hearing was held on the petition on March 9, 2021.

Kristy testified that she and Robert have a son together. Kristy works as a substitute teacher at her son's school, and on the morning of February 4, 2021, she drove herself and her son to school. At that time, Kristy's fourteen-year-old daughter from a prior relationship, Kyla, was at home sick, and Robert was also at the house. Kristy stated that after they got to school her son was not feeling well and wanted to go home, so she called Robert to ask if he would pick their son up from school. However, after Robert did not answer the phone, Kristy drove their son home.

Kristy stated that when she arrived back home that morning, she and Robert got into an argument in the downstairs hallway. Kristy stated that Robert ordered her to leave the house, but she refused. According to Kristy's testimony, Robert put his arm around her neck and was slinging her from side to side trying to get her out the door. Kristy stated that Robert then had her on the floor with his knees in her back, was screaming at her, and called her "MFer" several times. Kristy stated, "I just knew my life was in danger and that he had just snapped, and I was just trying to get away." Kristy called Kyla's name and hollered, "Call 911, I need help." Kyla came running down the stairs crying and screaming and admonished Robert to "get your hands off my mom." Kyla then called the police, and Robert left the house before the police arrived. Kristy testified that during the altercation she was very afraid for her safety.

Kristy also testified that she suffered injuries during the episode. She stated that she sustained bruises and red marks to her side, neck, shoulder, back, and fingers. Kristy introduced photographs that were taken later that day that allegedly showed some of these bruises and red marks caused by Robert. Kristy stated that she went to the doctor due to injuries to her ribs,

and she stated that her injuries were very painful and made it so she "couldn't hardly do anything" for several weeks.

Kyla testified next. Kyla stated that on that morning she was asleep upstairs when she heard Robert yelling and calling her mother an "MFer." Kyla stated that she ran downstairs and saw Kristy on the floor with Robert's knees on her back. Kyla "kind of pushed him back" and yelled, "Don't touch her!" According to Kyla, Robert told her that her "mom's crazy" and that he was "just trying to hold her back [because] she was trying to break stuff." Kyla stated that after she called the police and Robert left the house, she saw her mother's injuries. Kyla stated that there were marks around Kristy's neck and on her ribs and that Kristy had a jammed and bruised finger.

Robert testified on his own behalf. Robert acknowledged that an argument and, eventually, a physical confrontation occurred that morning, but he indicated that Kristy was the aggressor. Robert stated that Kristy "came busting in the door" and was "extremely upset [and] yelling at me for not answering my phone."[1] Robert stated that he was used to Kristy being upset because she yells a lot but that she was unusually upset and agitated that morning. Robert denied ever screaming at Kristy or calling her names, and he testified that Kristy was screaming at him and repeatedly calling him "MFer."

Robert stated that Kristy started screaming at him about getting his tax papers, and when he advised that he did not have all the paperwork together, she became incensed. Robert stated

---

[1] Robert noted that he never heard the phone ring because he was outside the house when Kristy called.

3

that Kristy started swinging a file folder around and just barely missed a glass vase and that he did not want glass flying everywhere in the house. According to Robert, Kristy was "acting really reckless" and "was screaming so loud at me that I was afraid she was going to hurt her voice." Robert tried to calm Kristy down, but she became even louder. Because of Kristy's volatile behavior and because there were children trying to sleep upstairs, Robert put his arm around her shoulders and "hugged her up to me pretty firm." In an attempt to take the argument outside the house, Robert put his arm around Kristy's shoulders and reached for the front door. At that point, Kristy started flailing her arms and swinging her fists and hit Robert three or four times in the chest.

Robert maintained that during the argument he was not trying to touch Kristy in an offensive manner nor was he trying to hurt her or scare her. He stated, "She knows I wasn't trying to scare her or intimidate her or offend her in any way." Robert stated that after the argument, he left the house to visit his mother, who was in a nursing home. Robert stated that although the police were called that day, he was never contacted by the police, and no criminal charges were filed. Robert denied causing any injury to Kristy, although he acknowledged that the red marks on her back may have been caused from having his arm around her, and that the red marks on her shoulder probably occurred when "[he] had [his] arm around her shoulder and she just went berserk." Robert also stated that Kristy is fair-skinned and that "[he] could probably walk up to her and put [his] finger on her and it would leave a mark." Robert stated that at no time had he ever laid his hands on Kristy in an offensive or threatening manner. Robert surmised that Kristy fabricated these allegations to gain leverage in their impending divorce.

On the day of the hearing, the trial court entered an order denying and dismissing Kristy's petition for an order of protection. The trial court found that Kristy failed to prove by a preponderance of the evidence that Robert committed domestic abuse. This appeal followed.

## II. *Standard of Review*

Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Walter v. Chism*, 2018 Ark. App. 127, 543 S.W.3d 550. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*

## III. *Analysis*

At a hearing on a petition filed under the Domestic Abuse Act, upon a finding of domestic abuse, the trial court may provide relief to the petitioner. Ark. Code Ann. § 9-15-205(a) (Repl. 2020); *see also Wornkey v. Deane*, 2017 Ark. App. 176, 517 S.W.3d 438. Pursuant to Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020), "domestic abuse" means "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent harm of physical injury, bodily injury, or assault between family or household members." "Family or household members" include spouses and persons who presently or in the past have resided or cohabitated together. Ark. Code Ann. § 9-15-103(5).

Kristy argues that the trial court erred in denying and dismissing her petition for an order of protection. She alleges that she proved by a preponderance of the evidence that she was the

5

victim of domestic abuse both because Robert inflicted physical harm and bodily injury to her and because he inflicted imminent fear of physical harm and bodily injury. Kristy relies on her testimony about the assault and the extent of her alleged injuries, as well as the photographic evidence depicting these injuries. Kristy asserts further that her imminent fear was evident because she was in trouble, could not get away from Robert, and yelled for her daughter to call 911. Kristy asks this court to reverse the trial court's order denying her petition for an order of protection and enter an order of protection for a term of three years.

We do not agree with Kristy's argument on appeal. Although Kristy indicated in her testimony that Robert was the aggressor and caused her bodily injury and fear of imminent physical harm, this testimony was controverted by Robert's account of the events. Robert indicated that Kristy was the aggressor, that he was only trying to calm her down, and that he did not injure or scare her. Although Kristy would have us credit her version of the events, our supreme court has long held that it is not for this court to determine the credibility of witnesses. *See, e.g.*, *Smith v. State*, 271 Ark. 671, 609 S.W.2d 922 (1981). For this court to reverse and direct the entry of an order of protection would require us to make a credibility decision, which we will not and cannot do.

In her argument on appeal, Kristy takes issue with the italicized portion of the following comments made by the trial court at the close of the hearing:

> When I reviewed this petition for order of protection, I had some hesitation about signing the ex parte order of protection because there was not any specific or time reference to other acts of alleged misconduct, but there were some general allegations of prior threats. There was no testimony provided today about threats of death or harm directed by Mr. Crews in the past - directed by Mr. Crews toward Ms. Crews. Ms. Crews testified today that there have not been any prior physical altercations between them

6

before this February 4th, 2021 incident.  It is clear that an incident occurred on February 4th, 2021.  The police were called following the incident, but no complaint or affidavit has been filed by Ms. Crews.  The parties' testimony about the February 4th incident is not consistent, which is not surprising.  *The court is not in a position to determine that one party's testimony is more credible than the other.*  I find that petitioner has failed to meet her burden of proof to justify issuance of an order of protection.  The petition is denied.  The ex parte order of protection is vacated.

(Emphasis added.)

We are unsure how to interpret the trial court's statement from the bench that "[t]he court is not in a position to determine that one party's testimony is more credible than the other."  It may be that the trial court concluded that each party's testimony was equally plausible and therefore that it could not credit one account as more likely than the other.  It may also be that the trial court was finding that Kristy had the burden of proof and had failed to meet it.  At any rate, in the written order being appealed, the trial court denied Kristy's petition for an order of protection because it found that Kristy did not prove domestic violence by a preponderance of the evidence.

As the petitioner, Kristy had the burden to prove her allegations of domestic abuse by a preponderance of the evidence, *see Morales v. Garcia*, 2021 Ark. App. 438; *Oates v. Oates*, 2010 Ark. App. 345, 377 S.W.3d 394, i.e., that it was more likely than not that domestic abuse occurred.  *See Turner v. State*, 2017 Ark. App. 682, 537 S.W.3d 299.  It was not Robert's burden to prove otherwise.  Here, the trial court found that Kristy failed to meet her burden of proof, and on this record we are not left with a definite and firm conviction that a mistake has been made.

Affirmed.

7

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Mary Goff*, Legal Aid of Arkansas, for appellant.

One brief only.