Cite as 2024 Ark. App. 40

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-217

| | | |
|---|---|---|
| STEVEN BRAZIL | | Opinion Delivered January 24, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR-22-1096] |
| V. | | |
| JULIE GOGGINS BRAZIL | | |
| | APPELLEE | HONORABLE BRENT DILLON HOUSTON, JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Steven Brazil appeals the December 12, 2022 final order of protection granted by the Saline County Circuit Court in favor of Julie Goggins Brazil. He challenges the sufficiency of the supporting evidence as well as the denial of his motion for new trial, additional findings, and reconsideration of the order of protection. We affirm.

I. *Facts and Procedural History*

On November 18, 2022, Julie filed a petition for an order of protection against her former spouse, Steven, alleging, "I fear for my life. He has left a death threat and is harassing me. The mental and emotional abuse is excessive." Julie further indicated that Steven owned multiple firearms and that she did not know where they were located. In the accompanying affidavit, Julie asserted:

I was divorced from Steven Brazil on 8-2-22. I was awarded the marital home, and he had to move out in 10 days. He moved out, and I moved in, and bloody sheets were in the washer, an electrical cord was damaged and very dangerous found plugged in under a desk. A contempt of court was filed that will go before the judge on 12-19-22. On 10-7-22 I found a death threat in my front yard that had my name and had been burned—during a burn ban. I live in a home that backs up to woods which could have caught fire. I called the police on 10/8/22 to see if I could get a report and they said I did not have video of him placing it in the yard. 11/10/22 I saw 4 masked people in my yard on the Ring camera and called the neighbors. They turned on more lights and ran outside and the people ran off. I called police and they shined a light and said they were gone. I asked for a report, and they said they were the only car in the county, and it would be on a call log. I have the cord and death threat and video with me.

There was no specific allegation in the petition, affidavit, or transcript that Steven had physically harmed Julie.

A temporary order of protection was entered on November 18. Steven claims there is no evidence in the record that it was served on him; however, page 3 of the record pleading and a November 30, 2022 docket entry indicate a return of service dated November 22, 2022.

A hearing on Julie's petition was held on December 12, at which Julie and Steven were both represented by counsel. No challenge to service was made by Steven to the circuit court.

Julie testified that she and Steven were divorced on August 2 and that she took possession of their formerly shared residence on August 12. Julie presented a text message sent from Steven to her on August 4, 2022, that stated, "I'm just warning you, the memories in this house will haunt you. Or at least they have me." Julie explained that on August 12, when she took possession of their formerly shared residence, she found bloody sheets in the

open washing machine and a missing lock on the entry door between the garage and the kitchen. Julie presented a photograph depicting that the middle part of the lock was missing and stated that this caused her considerable concern because if someone had the garage code or garage door opener, then that person could enter into the home due to the broken lock. Julie also presented photographs of the electrical cord that was stripped to the bare wire and plugged into the wall. She testified the stripped cord was in the place of an extension cord in working order and that she discovered the normal extension cord in the garage, which caused her to think it was an intentional act to replace a working extension cord with a cord that was stripped and had exposed wire.

Julie testified that on October 7, she found a funeral balloon that contained a handwritten note that said, "Julie, my loving wife. I miss you so much. Love you. Go Hogs." Later characterizing the funeral balloon as a lantern, Julie read part of the message on the lantern for the circuit court: "In memory of those who are no longer with us. May this light ascend to heaven and shine with you within the vastness of infinity." Julie testified that when she found this item she was "very scared" for her safety at that point. She stated that she viewed the message on the balloon as a death threat and was "absolutely" concerned. Further, Julie noted that she is a graduate of the University of Missouri and that, in addition to her opinion that the handwriting on the balloon was Steven's, she testified that during their marriage, Steven would say "Go Hogs" to her because he always cheered for the team that played against Missouri. Julie acknowledged that after urging from her brother, she made a police report on October 8.

Julie testified that on November 10, she received notifications from her Ring doorbell camera and saw video footage of four people wearing ski masks running up on her property. Julie stated she contacted her neighbor, and her neighbor's husband turned on their lights and came out of the back of their home. After her neighbor's husband turned on the lights, they could hear people running back into the woods behind her home and dogs barking across the woods. Julie testified that she had no doubt that the first person in the video was Steven. Julie again affirmed that she was concerned for her imminent safety. Julie played the November 10, 2022 Ring doorbell video for the circuit court in support of her testimony and presented still photographs from the video depicting an unmasked female wearing riding boots. Julie also presented a photograph from a trail camera taken on November 10, 2022, depicting the masked individuals coming up the driveway next to her garage doors.

Julie's neighbor, Terry Polk, testified that on or about October 7, Julie noticed what appeared to be a white bag at the edge of her property. She explained that they walked over to pick it up while they were talking. Julie picked it up and discovered it was a balloon that had writing on it. Terry testified that Julie turned visibly pale and was terrified when she read what was on the funeral-type balloon. She stated that Julie immediately interpreted it as being a death threat, and she confirmed that the handwriting on it said, "Julie, my loving wife. I'll miss you."

Terry also testified regarding an interaction with Julie on November 10. Terry confirmed that she received a phone call from Julie that there were four people in ski masks on her property. Terry explained that her husband, Brett Polk, got his pistol and went out

4

the back of their house to check on the situation. Terry noted that during her interaction with Julie that evening, she noticed that Julie was very scared because masked intruders had come onto her property and that she believed one of them was Steven. Terry also testified that Julie had been visibly scared during these incidents and believed that Steven was going to harm her, even stating when Julie found the funeral balloon, she said, "He's going to kill me."

Brett Polk testified regarding his observations and actions on November 10 related to the masked intruders on Julie's property. Brett explained that he took a flashlight outside to determine whether there was a threat or danger. Brett acknowledged that he did not see any individuals when he searched outside but stated that he did see that Julie was in fear at that time. Brett testified that he did not recognize the individuals from Julie's video, but they had their faces covered. Brett testified that Julie and Steven's divorce had been contentious but that he had considered both Julie and Steven his friends. He acknowledged on cross-examination that he had not seen Steven act dangerously or be a problem but also noted that he tried to mind his own business.

Steven testified, denying all the allegations against him except that he left a dry-rotted extension cord plugged in around a desk so that he could plug in all his equipment. He noted that the electrical cord's casing was dry rotted, but the copper wire was not exposed and that he would use that same cord today because it was not dangerous.

Steven presented a photograph taken on October 8 to support his testimony that he had been at Greers Ferry with his girlfriend from after work on October 7 until October 9.

Steven denied ever seeing the balloon, denied that it was his handwriting, and specifically testified that the "G" in "Go Hogs" is not how he writes the letter "G."

Steven testified that he had not been back to the residence since August 12 at approximately 7:45 a.m., nor had he been back to the woods on the edge of the property. Steven was asked to identify his girlfriend's physical features and skin color, and he stated that she wears riding boots when she rides horses. However, Steven said she did not have tall dark boots, although there is a picture on Facebook from twelve years ago in which she is wearing that type of boot.

Steven testified that he had removed the "guts" of the lock to the door in mid-July because the door was getting stuck. Steven testified he put the removed parts in a laundry-room drawer and did not repair the lock because he felt it was secure with the existing deadbolt.

He testified further that he did not wish any bodily harm to Julie, had not threatened Julie, did not wish "ill will" on her, had no reason whatsoever to contact her following August 12, and did not object to a no contact order being entered in the divorce case. Steven objected to the entry of an order of protection, but because he did not understand the severity of an order of protection, he did not want it to affect his employment.

Melinda Egandoerfer, Steven's girlfriend, testified that she and Steven were at Greers Ferry from October 7 until October 9, and she identified a photograph on Steven's phone that showed her at the lake on October 8 at 1:42 p.m. Melinda testified that she was home on November 10 and had not been to Julie's home, and she denied that she was an individual

depicted in one of Julie's Ring doorbell camera screenshots. Melinda also denied owning any boots like the boots pictured on one of the individuals and testified she had not seen Steven try to contact Julie.

On cross-examination, Melinda stated she could not account for Steven's whereabouts on October 6, that he was probably with her, but that she did not know. Melinda identified her Facebook page and a picture from her account showing her wearing tall dark boots. Melinda testified that she was in her twenties in that photograph but did still own the "boots that are tall."

A three-year final order of protection was entered on December 12, effective until December 12, 2025. In that order, the circuit court found that it had jurisdiction; "[Steven] has been provided with proper notice and the opportunity to be heard"; and "the victim(s) is (are) in immediate and present danger of domestic abuse and therefore an Order of Protection is hereby granted pursuant to the terms herein." Steven was prohibited from initiating any contact with Julie at her residence, her workplace, and an additional address in St. Louis, Missouri. The warnings to Steven included the potential for imprisonment and fines up to $2,500. The order also prohibits Steven from possessing a firearm, among other things.

On December 27, Steven filed his motion for new trial, additional findings, and reconsideration of the December 12 order of protection. On January 12, 2023, Steven filed his initial notice of appeal. On February 21, after his motion was denied by operation of law,

Steven filed his amended notice of appeal, adding notice of his appeal from the denial of his motion.

## II. *Standard of Review and Applicable Law*

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, at 6, 447 S.W.3d 585, 588. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* at 7, 447 S.W.3d at 589. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*

## III. *Discussion*

A. Sufficiency of the Evidence Supporting the Order of Protection

Arkansas Code Annotated section 9-15-201 (Repl. 2020) requires that a petitioner file an affidavit alleging specific facts and circumstances of domestic abuse in connection with a request for an order of protection under the Domestic Abuse Act. When a petition for a protective order is filed under the Domestic Abuse Act, the circuit court may provide relief to the petitioner upon a finding of domestic abuse. Ark. Code Ann. § 9-15-205(a) (Repl. 2020). "Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or

8

household members[.]" Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).[1] This court has defined "imminent" to mean likely to occur at any moment or impending at the time of the alleged abuse. *Hocut v. Hocut*, 2022 Ark. App. 452, at 6, 655 S.W.3d 527, 532.

If an order of protection is granted without sufficient evidence to support a finding of domestic abuse, the order will be reversed. *See Paschal v. Paschal*, 2011 Ark. App. 515, at 7. Where there is no evidence that the respondent committed physical abuse or inflicted imminent fear of physical harm, bodily injury, or assault, it is an abuse of discretion to issue the order of protection. *Claver v. Wilbur*, 102 Ark. App. 53, 59, 280 S.W.3d 570, 573 (2008).

Steven argues that here, there is no allegation that meets the required statutory definition nor is there sufficient evidence to support a finding of domestic abuse pursuant to section 9-15-103. He notes that even in cases that involve a past history of physical abuse—not alleged in this matter—we have held that harassing texts and phone calls "do not fall under the legislative definition of domestic abuse." *Paschal*, 2011 Ark. App. 541, at 7.

Steven argues that Julie had an affirmative obligation to present evidence to the circuit court that he committed acts of physical or bodily harm against her or that she was in fear of such harm from him. *See Morales v. Garcia*, 2021 Ark. App. 438, at 6. He maintains that she failed to meet that burden either in her affidavit or in her testimony.

The circuit court did not make any specific written findings to support its entry of the order or protection, stating the following at the conclusion of the hearing:

---

[1]It is undisputed that the parties meet the definition of "family or household members" as defined in section 9-15-103(5).

First piece of evidence I want to focus on is the text message dated August the 4th where Mr. Brazil says, "I'm just warning you, but the memories of this house will haunt you." Then, after that text message was sent, a couple of months later this funeral balloon is found, "In memory of Julie, my loving wife. I miss you so much." with a heart and a "U" and a "!" found on Ms. Brazil's property, and her first name is Julie. And if I were to receive this kind of balloon on my property with my name written on it, I would have to believe that's a threat. I can't see it any other way. Because this is being written for someone who has passed on. And certainly, the implication is that Julie is deceased and no longer with us. So, Mr. Brazil, I'll just tell you, I don't believe your testimony. I just do not. I think that the coincidences here are just too great. The fact that this balloon was placed on this property, and then you just happen to be at Greers Ferry after that. I'm entering the Order of Protection because I believe that those things together are, as the statute defines, fear of imminent physical harm or bodily injury. So, I'm entering the Order of Protection. I'm going to do so for three years.

Steven argues that the text referenced is not a threat and was clearly not perceived as one by Julie. The text at issue is from August 4, 2022, days after the decree was entered and three months prior to the alleged behavior that gave rise to the petition for an order of protection. In its ruling, the circuit court mentions only the first half of the text message. The full text says, "I'm just warning you but the memories in this house will haunt you, *or at least they have me*." (Emphasis added.) Approximately three hours after that text, Julie wrote back to Steven and told him he could have the bed in the master bedroom. He notes that they continued to have a normal text exchange regarding the division of their property. Steven claims that no one took that text as a threat, and not even Julie testified at the hearing that she found the text in question to be a threat.

Further, he claims that there is no evidence that connects him to the paper lantern, and the testimony at the hearing left the origin of the lantern questionable, at best. The lantern contains printed language stating, "In memory of those who are no longer with us,

may this light ascend to heaven and shine with you within the vastness of infinity." In a blank box under the words "In memory of," there is handwriting that says, "JULIE MY LOVING WIFE I MISS U SO MUCH!! [heart] U! GO HOGS!!"

The testimony at the hearing indicated that the lantern initially was seen the morning of October 7, 2022, by Terry Polk and that no one did anything about it until after work that day. He notes that although Julie testified the incident occurred during a burn ban and that she was very scared when she found the paper lantern—the type that you light to make it float up, she did not call the police until the next day after speaking with her brother about it.

Finally, Steven urges that there is no evidence that the individuals who were alleged to be on Julie's property had anything to do with him or were threatening her in any way. Again, Steven points out that Julie did not call the police but instead called her neighbors to investigate. Evidence indicated that when Brett Polk went outside, the people ran back into the woods. And despite Julie stating that it caused her concern for her "imminent safety and physical fear," she did not file her petition for an order of protection until November 18, 2022, over a week later.

Steven argues that without evidence of prior physical harm, a prior pattern of harm, or actions that would demonstrate that Julie was in fear of imminent physical harm, the circuit court's entry of an order of protection for three years is clearly erroneous or against the weight of the evidence. We disagree.

Despite Steven arguing that the evidence was insufficient to support the circuit court's finding of domestic abuse, he ignores the testimony and evidence presented by Julie and her supporting witnesses. This court has affirmed prior decisions largely due to the credibility findings of the circuit court. *See Armstrong v. Armstrong*, 2019 Ark. App. 188, at 4, 574 S.W.3d 720, 722 (holding that even if the facts were limited to the most recent incident, it was within the purview of the circuit court to assess the witnesses' credibility); *see also Walter v. Chism*, 2018 Ark. App. 127, at 6, 543 S.W.3d 550, 553 (affirming the grant of an order of protection where the circuit court resolved two diametrically opposed versions of events on the basis of the credibility of witnesses).

We reject Steven's attempt to draw our focus only on "physical domestic abuse" and note the circuit court's specific acknowledgement of Julie's credible testimony and supporting evidence of her imminent fear of harm, bodily injury, and assault from her former spouse. *See* Ark. Code Ann. § 9-15-103(4)(A). Julie presented evidence of the "I'm warning you" text message; the funeral balloon containing a written statement implying she was dead and in handwriting she testified was Steven's handwriting left at her home; the dangerous electrical cord admittedly left by Steven in the home; the broken lock to the door; and images of individuals on her property at night wearing masks to conceal their identities. The circuit court analyzed the evidence before it as well as the credibility of the parties and found in favor of Julie. Steven's appeal essentially asks this court to reweigh the evidence in his favor and to reach a result contrary to that of the circuit court. But under the standard of review, this court does not act as a "super fact-finder, and it is not reversible error for the circuit

court to weigh the evidence differently" than Steven asks the evidence to be weighed. *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 13, 554 S.W.3d 285, 293. The credibility of any witness's testimony is to be assessed by the trier of fact—and the trier of fact may believe all, part, or none of it. *Id.*

B. Denial of Motion for New Trial, Additional Findings, and Reconsideration

Steven also argues that the circuit court erred in denying his motion for new trial, additional findings, and reconsideration of the December 12, 2022 order of protection that was filed on December 27. In it, Steven argued that the evidence presented was insufficient for the finding of domestic abuse, as discussed above. Additionally, Steven argued that the finding of domestic abuse interfered with his constitutional right to bear arms, both inside and outside of the home, and, as such, should be subject to a higher level of scrutiny.

Because there was no reversible error in the circuit court's grant of the order of protection, we hold there likewise is none in the circuit court's denial of Steven's motion.

Affirmed.

VIRDEN and WOOD, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren White Hoover*, for appellee.