Cite as 2025 Ark. App. 332

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-24-452

| | |
|---|---|
| AIDEN JONES | Opinion Delivered May 28, 2025 |
| APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT |
| V. | [NO. 36DR-23-256] |
| ASHLEY ZACHERY | HONORABLE ELLEN BRANTLEY, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Aiden Jones files this one-brief pro se appeal of the April 24, 2024 final order of protection entered by the Johnson County Circuit Court in favor of Ashley Zachery. He argues that (1) the circuit court erred, abusing its discretion in issuing the ex parte order of protection; (2) the evidence at the final hearing was inadequate to meet Zachery's burden of proof for a final order; and (3) he was not afforded due process despite his nonappearance. We affirm.

I. *Facts and Procedural History*

On November 9, 2023, Zachery petitioned the circuit court for an order of protection against Jones. Zachery's affidavit supporting her petition alleged that Jones harassed her family; that she was continuously in fear of Jones due to his mental health; that he stole her cat, claiming "revenge tactics"; that he vandalized her parents' vehicles (specifically that he

slashed the tires and totaled their vehicles); and that he was stalking her and her family, including sending pictures to them indicating he knew where they were. She also provided a police report from Jones's criminal case regarding vandalism of her apartment and her parents' home.

On the same day, the circuit court granted an ex parte temporary order of protection against him. The body of the order contains, in part, the following provisions as required by Arkansas Code Annotated section 9-15-207(b) (Repl. 2020):

> That the Petitioner has also presented sufficient evidence to show that the Respondent presents a credible threat to the physical safety of a person named in the order of protection as a family member or household member, a child of the family or household member, or a child of the respondent or enjoined party.
>
> . . . .
>
> That the Respondent is ordered to appear before the court on the 20th day of NOVEMBER, 2023, at 1:00 p.m. in the courthouse located at detention center, 301 Porter Ind. Rd, Clarksville, AR. <u>If you fail to appear. the Court will likely make this Order permanent without further notice to you</u>. The Respondent is hereby restrained from committing any criminal act against the victim(s) including but not limited to: acts of violence or Domestic Abuse, A.C.A. § 9-15-103(3); Harassment A.C.A. § 5-71-208; Harassing Communications A.C.A. § 5-71-209; Stalking A.C.A. § 5-71-229; or Terroristic Threatening A.C.A. § 5-13-301.
>
> The Respondent is prohibited from initiating any contact with the victim(s) including but not limited to physical presence, telephonic, electronic, oral, written, visual, or video. Respondent also shall not use a third party to contact the victim(s) except by legal counsel or as authorized by law or court order.

And paragraphs (5), (6) and (7) of the order included the "WARNINGS TO RESPONDENT" section of the temporary order and specifically reiterated the following:

> (5) A person who is a respondent or an enjoined party is restrained from harassing, stalking, or threatening a person named in an order of protection as a

2

family or household member, a child, of the family or household member, or a child of the respondent or enjoined party;

(6) A person who is a respondent or an enjoined party is restrained from engaging in other conduct that would place a person named in an order of protection as a family or household member, a child of the family or household member, or a child of the respondent or enjoined party in reasonable fear of bodily injury; and

(7) A person who is a respondent is prohibited from using, attempting to use, or threatening the use of physical force against the person named in the order of protection as a family or household member, a child of the family or household member, or a child of the respondent or enjoined party which would reasonably be expected to cause bodily injury.

A summons was issued, and Jones filed his first motion to dismiss on November 13, before he was served with the order on November 15.

The initial hearing on Zachery's petition was set for November 20, then continued to January 22, 2024, and continued again, at Jones's request, because of his pending felony criminal proceedings and outstanding discovery responses. Jones filed an answer to the petition on January 18 and another motion to dismiss on January 31 as well as a motion seeking the recusal of the circuit judge because of an ex parte email that he had previously sent to the circuit judge. An order of continuance was filed on February 14, setting a hearing date for March 25, and the circuit judge recused himself in an order dated February 15. The case was reassigned on February 15, and that judge recused himself on March 19 because he presided over a criminal case involving Zachery's allegations of criminal mischief against Jones. The remaining district judges also recused themselves. A special judge was assigned to the case, and the final hearing was set for April 22.

3

At the final hearing, Jones did not appear. The circuit court stated that it had received an email from Jones explaining why he was unable to appear—because there remained an outstanding warrant for his arrest, and he would have been arrested on the spot had he appeared—and that he had attempted to file a continuance on the matter. The circuit court determined that no motion had been filed at the time of the hearing, and even if it had, it did not constitute a legitimate reason to continue the hearing; accordingly, the hearing was held as scheduled. Jones's motion for a continuance was not filed until April 26, four days after the final order had been submitted.

Two witnesses appeared: Zachery and her mother, Stacey Zachery. Zachery testified that she came to know Jones while working with him at Murphy USA. She stated that she dated Jones for about five months, and then she ended the relationship on September 25, 2023. She testified that after the relationship ended, Jones would meet her as she walked home from work on a nature trail and that after work one night, he was on the trail and told her he was attempting to commit—or was committing—suicide. Zachery stated that she never asked Jones to meet her. She further stated there was another incident in October 2023 when Jones vandalized her family's home and destroyed their vehicles, and when the circuit court asked how she knew it was Jones, she stated he had been found guilty of the crime—clarifying that it was the basis for his criminal trial. Zachery further testified that Jones would constantly post on social media about the cases and that, at one point, he posted an image of her grandmother's backyard as his profile photo on Facebook. Jones also posted an image on his Facebook profile of a recorded phone call between him and Zachery with the caption

"R.I.P." When asked how Zachery knew about the post, Zachery stated that a friend had told her and sent it to her.

Zachery testified that she had a cat named "Dude," and shortly after she ended things with Jones, the cat disappeared. She was shown a photo of the cat, and she stated that it was her cat. The photo shown to Zachery was the same photo posted on Jones's Facebook page with the caption, "I'll leave this here." The photo was taken behind her old apartment. Zachery then stated that she had told a former coworker about her missing cat, and her coworker had texted Jones, and Jones replied that he turned in the cat as a stray after he was told it was missing, and he stated it was "revenge tactics." Zachery testified that she is afraid of Jones, that he continues to show up in her neighborhood and file things in court since she filed the petition, and that she just wants him to leave her family alone.

Stacey Zachery was then called to testify. She stated that these incidents had been affecting Zachery mentally, that Zachery and Jones broke up because she did not want to deal with some of Jones's problems, and that she has two children to protect. She noted that after they broke up, Jones harassed her family and vandalized their home and posessions and that she was afraid of what might come next. Stacey then testified that she started receiving phone calls from "no caller ID" and different numbers. She stated that most of the calls would occur at 11:11 p.m. or 1:11 a.m. and that those numbers were put in texts she sent to Zachery. Stacey testified that she once received seventy-four calls in one night and had received at least two hundred calls since Jones was released from custody. Stacey then stated that her vehicles had been vandalized and mentioned that Jones also poured chemicals in their pool. Stacey

5

also claimed that when her business was in Clarksville, Jones came and bought a painting from her, and he would walk by the store a lot before and after the vandalism. She went on to state that Jones filed a false claim with the Arkansas Attorney General's office using a fake name. Stacey stated she fears for her daughter, Zachery, as well as the safety of her grandchildren. She testified that Zachery had to give up her apartment and move in with her. After examination, the circuit court inquired about a work address because none was listed on the temporary order. Zachery moved to add her work address to the order of protection.

At the conclusion of the hearing, the circuit court stated:

> Well, I think I've made it very clear, you know, I don't know that there has been physical harm to her at this stage, but I believe that she and, in fact, her entire family are afraid of him and having heard what I have heard I don't think that's at all unreasonable. I mean, so far what has he mostly has engaged in has been a form of harassment. Although, when it has gone over the line, and I mean, no one should make these phone calls. I'm not in any way indicating that they should, but I mean, the actual destruction of property, I mean, that's that is dangerous in my mind. Not that it's dangerous, but what it shows about a person who would do that, and not even to the woman who's broken up with him, but to her family, and I think most people would have a reasonable fear. This is—now, I understand that sometimes break ups are messy. People don't always react in what is a sane way, which certainly—but it's gone on for a period of time become, you know, I don't want to say an obsession, but when someone breaks up with you months ago and you're still engaging in this kind of contact it does not strike me as a normal behavior and I do think it gives a reasonable person a reasonable ground to believe that he is a physical threat and under those circumstances I will put this in effect.

> Ordinarily I make these for one year, however, I don't see in this particular case—they don't share children, they don't have any real need to be together, you know, unless they choose to be, which it doesn't sound like she is likely to make that choice, but she's a grown woman. She can do what she chooses. I'm going to put it in effect for a period of two years. Should it happen to, even after two years things persist you can always come back. I just don't like to put things, you know, that just

stretch on forever because circumstances change—maybe one of you move, but I think two years in this particular case it would be.

The final order of protection was filed on April 24, and on May 20, Jones filed a timely notice of appeal.

## II. *Standard of Review and Applicable Law*

We recently reiterated our standard of review regarding final orders of protection:

> The standard of review after an order of protection is granted is whether the circuit court's findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake had been made. Disputed facts and credibility determinations are within the province of the fact-finder.

> The Domestic Abuse Act defines domestic abuse as physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members. Family or household members means spouses, former spouses, parents and children, persons related by blood within the fourth degree of consanguinity, in-laws, any children residing in the household, persons who presently or in the past have resided or cohabited together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together.

*Smith v. Payne*, 2024 Ark. App. 515, at 5 (internal citations omitted).

## III. *Discussion*

### A. Relationship Basis for Issuance of the Order of Protection

Pursuant to Arkansas Code Annotated section 9-15-201(c)(1) (Repl. 2020), a party may file petition for relief in the circuit court under this statute. A petition for relief shall allege the existence of domestic abuse under Arkansas Code Annotated section 9-15-201(e)(1). Domestic abuse is defined as physical harm, bodily injury, or assault, or the infliction of fear of imminent physical harm, bodily injury or assault. Ark. Code Ann. § 9-

7

15-103(4) (Repl. 2020). If an order of protection is granted without sufficient evidence to support a finding of domestic abuse, the order will be reversed. *See Paschal v. Paschal*, 2011 Ark. App. 515, at 7.

Jones submits that that Zachery failed to allege "domestic abuse" in her petition as required by statute. He filed an unsuccessful motion to dismiss Zachery's petition on January 31, 2024, arguing that she failed to state a claim upon which relief could be granted because her petition did not satisfy the statutory requirements to issue an ex parte order. Jones notes that Zachery stated in her affidavit attached to her petition that she was "good friends" with him, yet in her petition, she stated she was in a dating or previous relationship with him. Jones maintains that if Zachery is merely "good friends" with him, then pursuant to Arkansas Code Annotated section 9–15–103(5), which defines "family or household members" to mean persons who are presently or in the past have been in a dating relationship, she had no grounds upon which to pursue an order of protection. Accordingly, he contends that the circuit court abused its discretion in applying a subjective measure and issuing the ex parte order.

We disagree. Despite any conflict between Zachery's statements in the petition and her affidavit with respect to the relationship issue, there was express testimony from both Zachery and her mother that she and Jones had been in a dating relationship. The circuit court acknowledged as much, and Jones does as well various times in his brief. Accordingly, we hold that the circuit court did not err in finding that Zachery met the requirements of the family-or-household-member element of the statute.

B. Sufficiency of the Evidence in Support of Issuance of Order of Protection

Jones next argues that Zachery's testimony is silent regarding his inflicting or causing any type of harm toward her. He references Zachery's allegations that he continues harassing her and her family, whether posting on social media or allegedly stalking her and members of her family. Jomes submits that these allegations alone are insufficient to meet the statutory criteria under Arkansas law regarding alleged domestic abuse and that a critical examination of Zachery's allegations reveals insufficiencies, legal and factual, that justify reversal.

Jones argues that Zachery's allegations are wholly centered on harassment and stalking of both her and her family. Though he acknowledges her allegations of his actions are concerning, he claims that it is essential to assess them within the required legal framework. He references Arkansas Code Annotated section 9-15-103(4)(A) and the specific definition of domestic abuse, which includes "physical injury, bodily harm, or assault." He asserts that to obtain an order of protection, Zachery was required to produce sufficient evidence to show that the victims listed in the petition are in "imminent present danger" of domestic abuse. *See Hancock v. Hancock*, 2013 Ark. App. 79. The term "imminent" means "'likely to occur at any moment' or 'impending' at the time of the alleged abuse, not at the time of filing the petition for protective order." *Simmons v. Dickson*, 96 Ark. App. 260, 266, 240 S.W.3d 608, 612 (2006).

Jones notes that Zachery stated in her petition that she had never previously filed an order of protection against him, and he claims that she failed to establish any pattern of abuse to justify her claim of imminent threat of harm. Jones maintains that her testimony

does not allege that he caused harm or threatened any harm personally to her. He states that Zachery's allegations of cat theft, whether true or not, did not inflict any harm on Zachery. Further, he claims the comment "R. I. P." on his Facebook page is vague and, without context, cannot be deemed a threat. He argues that Zachery's testimony that he vandalized her parents' property does not amount to any threat or fear of a threat. He submits that because Zachery stated it was her "home and vehicles," it can be argued that this was an isolated incident involving a member of her family and not directed toward Zachery herself. Jones maintains that either way, property damage in and of itself does not amount to domestic abuse. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. Jones urges that Zachery's allegations lead only to subjective fear of harm from him and fail to establish a pattern of a previous or current threat of domestic abuse. Because her allegations concern harassing or controlling behavior, they do not fit within the legislative definition of domestic abuse. *See Paschal*, *supra*.

Jones then restates much of the testimony from Stacey Zachery. He claims that although he feels sympathy for Stacey, her allegations fail to describe any incident that supports Zachery's allegations. He asserts that Stacey merely recites in her own words the same allegations that Zachery presented, thus falling short of alleging—much less substantiating—a pattern of domestic abuse as required by law. He points out that the incidents, such as the recurring phone calls, false business claims, and vandalism, are directed toward Stacey and not Zachery. Jones urges these are "isolated incidents" that merely allege subjective fear of harm to her daughter, Zachery, and her grandchildren.

Jones argues that the circuit court based its decision to issue the final order on the fact that, because he continued to harass Zachery for several months after the break up, a reasonable person would believe he is a threat—specifically, a physical threat—because his behavior is not considered normal. He submits that the circuit court specifically stated that he has not caused any harm but that his actions are dangerous. Jones states that it is clear from the record that the circuit court based the decision to issue a final order of protection on what *could* happen in light of the allegations and testimony against him, despite that no previous pattern of abuse was alleged. Jones stresses that without concrete evidence to establish physical harm, bodily injury, assault, or acts of such, Zachery's claims do not justify the issuance of an order of protection. *Oates v. Oates*, 2010 Ark. App. 345, 377 S.W.3d 394.

We disagree with Jones's depiction of the evidence and hold that the circuit court did not err in entering the final order of protection. Despite his claim that there was no pattern of concerning behavior, Zachery's and Stacey's testimonies—regarding Jones's actions including Jones following Zachery late at night after work on the nature trail that she walks to and from work, posting a picture of Zachery's grandmother's backyard on his social media account, and Jones posting the image on his Facebook profile of a recorded phone call between Zachery and him with the caption "R.I.P.," along with the exhibits—support issuance of the order of protection. As far as harm Jones may have inflicted on Zachery, he overlooks that the definition includes not only the actual infliction of physical harm, bodily injury, or assault but also the infliction of fear of imminent physical harm, bodily injury, or assault. *See Brazil v. Brazil,* 2024 Ark. App. 40, at 12–13, 683 S.W.3d 600, 606 (holding that evidence of

11

an "I'm warning you" text message, a funeral balloon containing a written statement implying the alleged victim was dead in handwriting she testified was her ex-spouse's handwriting being left at her home, a dangerous electrical cord admittedly left by the ex-spouse in the home, a broken lock to the door, and images of individuals on her property at night wearing masks to conceal their identities was sufficient evidence of the alleged victim's imminent fear of harm, bodily injury, and assault from her former spouse to support the issuance of an order of protection).

Moreover, while section 9-15-207 includes restraining a respondent from "harassing, stalking, or threatening" but does not define "harassment," the criminal offense of harassment is defined in Arkansas Code Annotated section 5-71-208(a) (Repl. 2024) as conduct done "with the purpose to harass, annoy, or alarm another person, without good cause," including acts such as offensive physical contact, following, or repeated insults. As previously set forth, the temporary order of protection restrains Jones not only from acts of violence or domestic abuse but also from harassment, harassing communications, stalking, or terroristic threatening. His above-referenced actions, along with the continued loitering around the family business, when viewed in conjunction with the vandalism, provide sufficient support for the circuit court's determination that the issuance of the final order of protection was warranted.

C. Due Process

Finally, Jones claims his last point—that he was denied due process—is directly intertwined with the previous one. He maintains that from the record, it is obvious that he

did not appear at the final hearing on Zachery's petition. In the previous section, he challenges the sufficiency of the evidence supporting the order of protection on appeal and notes that in a civil bench trial, a party may challenge the sufficiency of the evidence for the first time on appeal. Jones notes that in a long line of cases, the Arkansas Supreme Court has held, in a civil bench trial, that a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *See Bohannon*, 2014 Ark. 458, at 5, 447 S.W.3d at 588. He notes that our supreme court overruled *Wills v. Lacefield*, 2011 Ark. 262, in *Bohanon*, *supra*, but does not specify that it overruled *Wills* to the extent that that case is inconsistent with case law stating that a party in a civil bench trial may challenge the sufficiency of the evidence for the first time on appeal. No one has argued that Jones cannot make this challenge now; thus, the circumstances are distinguishable.

Jones points out that before the final hearing, he wrote in an email to the circuit court that he had an active arrest warrant and would be arrested on site if he were to appear at the hearing. Jones states that he attempted to file a continuance but was unsure if it would be filed in time. The motion for continuance was, in fact, filed late—specifically, on April 26, 2024—four days after the issuance of the final order of protection. He submits that his situation is similar to *Bohannon*, *supra*. In *Bohannon*, Bohannon was incarcerated on a bench warrant for unpaid fines, and as a result, she could not appear. Even though Jones acknowledges he was at liberty at the time of the hearing, he maintains that his physical liberty likewise was in jeopardy because of his outstanding arrest warrant. Jones submits that in his motion for another continuance, he was asking for more time because of his situation.

He argues that he was not afforded due process and an opportunity to be heard to defend the allegations against him and that the final order of protection was based on Zachery's mere allegations.

We hold that Jones has failed to demonstrate reversible error by the circuit court on this point. From our review of the record, he has been actively involved in these proceedings from the outset and has not been precluded from challenging the sufficiency of the evidence supporting the issuance of the order of protection in this appeal. Accordingly, we affirm.

Affirmed.

KLAPPENBACH, C.J., and TUCKER, J., agree.

*Aiden Jones*, pro se appellant.

One brief only.